[No. 32482.   Department Two.   May 21, 1954.]

PETER MANELLO *et al., Respondents,* v. DOUGLAS BORNSTINE *et al., Defendants,* STUART K. NIELSEN, *Appellant.*[1]

[1]Reported in 270 P. (2d) 1059.

*Stuart K. Nielsen, pro se.*
*Richard D. Harris,* for respondents.

HAMLEY, J.—In October, 1950, Douglas and Roma Bornstine, husband and wife, and Peter and Catherine Manello, husband and wife, entered into a copartnership agreement consisting of four separate interests, share and share alike, to operate the Mercer Island Cleaners.

On September 15, 1951, Douglas Bornstine went to a drug store near his home and complained that several people, including his wife, were planning to burn him in a bonfire. He was arrested by the police and placed in the mental ward at Harborview hospital. On September 26, 1951, while still confined at Harborview, he was consulted by Stuart K. Nielsen, an attorney practicing in Seattle. Bornstine paid him

forty dollars, and on October 11, 1951, Nielsen succeeded in having Bornstine released on a writ of *habeas corpus*. However, Bornstine was again picked up that evening on a charge sworn to by the prosecuting attorney, and was returned to the mental ward at Harborview hospital.

It being apparent that further legal services would be necessary, Nielsen was retained by Bornstine as his attorney. In discussing the matter of a fee, Nielsen discovered that Bornstine had no money and no property other than his interest in the Mercer Island Cleaners. On October 13, 1951, and while still confined at Harborview, Bornstine executed to Nielsen a bill of sale covering what purported to be his undivided one-half interest in the Mercer Island Cleaners. The bill of sale recited that it was given in exchange for five dollars and "other good and valuable consideration."

Later, on November 8, 1951, Nielsen succeeded in having Bornstine released, and the charge against him dismissed. Since the evening of September 15, 1951, Douglas Bornstine has had nothing to do with the operation of the partnership, although he did later surreptitiously obtain possession of the partnership books. Since his release, Bornstine has worked as a tailor for a men's clothing store in Seattle.

This action was commenced by Peter Manello and Catherine Manello, his wife, against Douglas Bornstine and Roma Bornstine, his wife, Stuart K. Nielsen, and Raymond D. Ogden, Jr., who had been appointed receiver for Douglas Bornstine, asking that the partnership be dissolved and that the court fix the interests of the various parties. Raymond D. Ogden, Jr., receiver for Douglas Bornstine, cross-complained against Nielsen, praying that the bill of sale by Bornstine to Nielsen be held void and of no force and effect whatsoever.

After a trial, the court entered judgment decreeing that Douglas Bornstine had abandoned the partnership and that he had no interest in the business or its assets; that the bill of sale executed by Bornstine to Nielsen was in fraud of creditors and an invalid conveyance, and that Nielsen had

no interest in the partnership or partnership assets; that Raymond D. Ogden, Jr., as receiver, was entitled to the sum of three hundred dollars, which represented Douglas Bornstine's interest on September 14, 1951; and that Peter Manello, Catherine Manello, and Roma Bornstine each had a one-third interest as their sole and separate property in the partnership. Nielsen alone appeals.

Appellant challenges finding of fact No. 15, which states that Douglas Bornstine abandoned the partnership on September 14, 1951.

█ In order for one to lose rights in property by abandonment, it must be shown, among other things, that there was an intent to relinquish or part with such rights. *Davis v. Dennis*, 43 Wash. 54, 59, 85 Pac. 1079 (abandonment of mining claim); *Sander v. Bull*, 76 Wash. 1, 6, 135 Pac. 489 (abandonment of water rights); *Foss v. Culbertson*, 17 Wn. (2d) 610, 628, 136 P. (2d) 711 (abandonment of trade name).

Bornstine was apprehended by the police on September 15, 1951, after complaining that several persons were planning to burn him in a bonfire. This was one day after the asserted abandonment. He was confined in jail and at Harborview from September 15, 1951, until November 8, 1951. He transferred his interest in the partnership to Nielsen on October 13, 1951.

█ It is therefore apparent that Bornstine did not intend to abandon his interest in the partnership. He was initially moved to absent himself because of an insane delusion, and was thereafter forcibly restrained from returning.

Moreover, the trial court, in dealing with the other issues of the case, acted in apparent disregard of its finding of abandonment. The court found that the receiver, who had been appointed on October 25, 1951, was entitled to receive the sum of three hundred dollars as Douglas Bornstine's share of the partnership profits, assets, and other moneys due from the business. If Bornstine had abandoned the partnership in September, he would have no interest therein which could be transferred to the receiver.

In our view, the finding as to abandonment is neither

supported by the evidence nor consistent with the other findings, and was erroneously entered.

Appellant also questions finding of fact No. 11, wherein the trial court found that the bill of sale executed October 13, 1951, was given in fraud of Douglas Bornstine's creditors. At the time the bill of sale was executed, Bornstine had two judgments outstanding against him (for alimony payments to two former wives) which exceeded his total assets, and this fact was known to Nielsen.

This question calls for consideration of the uniform fraudulent conveyances act, found in RCW 19.40.010 *et seq.* [*cf.* Rem. Supp. 1945, § 5854-40 *et seq.*]. There are two sections of this statute which could possibly apply to the transfer in this case. These are RCW 19.40.040 and 19.40.070 [*cf.* Rem. Supp. 1945, §§ 5854-43 and 5854-46.]

RCW 19.40.040 renders a transfer fraudulent when made by an insolvent person without "fair consideration."

The bill of sale in question was given to Nielsen in consideration of legal services rendered and to be rendered in securing Douglas Bornstine's release. If there is a reasonable relationship between the value of these legal services and the value of the bill of sale, then there was a "fair consideration," under the statute noted above.

The bill of sale purports to convey the interest of Roma Bornstine as well as that of Douglas Bornstine. The trial court found, however, that this was not community property. While appellant challenges this finding, we are of the opinion that it is not contrary to the clear preponderance of the evidence. It follows that the bill of sale could convey only Douglas Bornstine's interest. The trial court found that the value of the partnership interest of Douglas Bornstine on September 14, 1951, did not exceed the sum of three hundred dollars.

In his oral opinion, the trial judge stated that he would find that the value of Nielsen's services to Douglas Bornstine did not, at most, exceed six hundred dollars. While no actual finding to that effect was made, respondents concede that this should be regarded as a finding of fact.

Accordingly, the consideration received by Bornstine was about twice the value of the bill of sale, and was therefore a "fair consideration."

At the time of the transfer, appellant was a creditor of Bornstine. Prior to the execution of the bill of sale, Bornstine gave Nielsen forty dollars. Nielsen expended all but $13.10 of this sum for necessary court costs. The legal services rendered by Nielsen prior to the execution of the bill of sale included four conferences with Bornstine at the hospital; seven hours spent briefing, preparing papers, and conferring with others; and three appearances in court, including a hearing of several hours' duration. Obviously, the $13.10 remaining from the forty-dollar advance did not represent reasonable compensation for these services. Nielsen was therefore a creditor of Bornstine at the time the instrument in question was executed.

■ It is true that part of the consideration for the bill of sale consisted of legal services to be rendered in the future. This, however, has no bearing upon the question of whether the conveyance was fraudulent. In *Zent v. Gilson,* 52 Wash. 319, 100 Pac. 739, it was held, in effect, that an assignment of property to attorneys in payment for services rendered and to be rendered to a person charged with a crime, to the extent of a reasonable fee, is made for a fair consideration, and is not, in the absence of a showing of an actual intent to defraud, a fraudulent conveyance. Compare *Seargeant v. Russell,* 110 Wash. 216, 188 Pac. 466, overruled on another point in *In re Yand's Estate,* 23 Wn. (2d) 831, 162 P. (2d) 434.

RCW 19.40.070 provides that every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors is fraudulent as to both present and future creditors.

■ There is no question but that the assignment here in question operated as a preference in favor of Nielsen and against the other nonpartnership creditors of Douglas Bornstine. But this court has consistently held it to be the rule

that a debtor, though insolvent, may, in good faith, prefer one or more of his creditors over all other creditors, even to the extent of exhausting his assets. *Haskell v. Phelps,* 191 Wash. 567, 71 P. (2d) 550, 114 A. L. R. 403.

■ We find here no evidence tending to establish, circumstantially or otherwise, an actual fraudulent intent. There was adequate consideration; the transferor did not retain possession; the transferor and transferee were not related to each other; the transferor retained no benefits; there was no agreement to reconvey. In our opinion, every fact and circumstance surrounding the bill of sale transaction, considered separately or together, tends to establish only a permissible preference.

It is therefore our conclusion that the trial court erred in finding and concluding that the bill of sale in question constituted a fraudulent conveyance.

■ The one serious charge that respondents level against this transaction is that Bornstine did not have the mental capacity to execute and deliver the assignment. The trial court expressly declined to make a finding as to Bornstine's mental capacity, although it did find that Bornstine "became mentally ill." This was a material issue in the case, and respondents were entitled to a finding of fact upon it. *Bowman v. Webster,* 42 Wn. (2d) 129, 253 P. (2d) 934.

■ The fact that Bornstine prevailed in a *habeas corpus* proceeding involving his confinement in a hospital ward and in two mental illness proceedings is not *res judicata* on the question of mental capacity to execute and deliver the bill of sale. The issues there disposed of were not the same as that which is involved in this case, nor were respondents parties to those proceedings.

There is a conflict in the evidence as to whether Douglas Bornstine had sufficient mental competence to execute this instrument. Four witnesses, including Douglas Bornstine, testified that he had such competence. Two other witnesses gave testimony tending to indicate either that Bornstine was generally incompetent, or that he was suffering from an

insane delusion which directly resulted in the execution of the bill of sale.

In view of this conflict, and since the appearance and demeanor of Douglas Bornstine on the witness stand are not revealed by the record, we will not attempt to supply the missing finding of fact.

Since the trial judge is deceased, this case will be sent back for a new trial limited to the indicated question of mental competency, with directions to conduct such accounting or other proceedings and enter such judgment, not inconsistent with the views expressed above, as may be called for upon the determination of the issue of mental competency. It is so ordered.

Costs on this appeal shall abide the result of the action in the trial court.

GRADY, C. J., DONWORTH, and FINLEY, JJ., concur.

SCHWELLENBACH, J., concurs in the result.