[No. 39021.    Department Two.    November 9, 1967.]

TACOMA ASSOCIATION OF CREDIT MEN, *Plaintiff*, v.
DICK LESTER *et al.*, *Respondents*, ARNOLD
DOERSAM *et al.*, *Appellants*.*

*McGavick, Betzendorfer, Hemmen & Bottiger*, by *M. H. Hemmen*, for appellants.

*Murray J. Anderson* (of *Anderson & Bingham*), for respondents.

FINLEY, C. J.—This is an interpleader action initiated by the assignee of the assets of the Northwest Sausage Company (Northwest), a Washington corporation, under a common law assignment for the benefit of creditors, to determine the relative rights of creditors of Northwest to proceeds which resulted from liquidation of Northwest's assets. Disputants are the general creditors of Northwest, respondents here, and Arnold Doersam and his wife Norah, appellants here, who claim a superior interest in the proceeds as mortgagees of Northwest's land. Arnold Doersam will hereafter be treated as if he were the sole appellant.

*Reported in 433 P.2d 901.

Northwest was formed in 1955. Arnold Doersam, Norah Doersam, B. F. Boetcher and Vera E. Boetcher own all of Northwest's outstanding stock. Norah Doersam and Vera Boetcher each own one share of stock. Their husbands each own 199 shares of stock. Arnold Doersam is president of Northwest and B. F. Boetcher is secretary and general manager. Arnold Doersam is also the sole proprietor of the Ace Packing Company (Ace). Ace is one of Northwest's principal suppliers of meat.

In January of 1965, Northwest was in serious financial trouble. It is conceded by the parties that Northwest was insolvent under any of the usual insolvency tests. Apparently, appellant Doersam, in his capacity as sole proprietor of Ace, became concerned about Northwest's indebtedness to Ace, and this concern stimulated the transactions which led to the instant dispute.

On January 14, 1965, Doersam withdrew $23,000 from Ace. On the same day, Northwest issued a check to Ace in the sum of $23,000. The next day, January 15, 1965, appellant Doersam withdrew from his personal account the $23,000 which he had obtained from Ace and conveyed it to Northwest, receiving in exchange Northwest's promissory note and a first mortgage on Northwest's real property. The following rationale was given for the transfers: Northwest transferred $23,000 to Ace to discharge a debt owed to Ace by the Columbia Sausage Company, Northwest's predecessor, in the amount of $3,444.49, and also to discharge Northwest's indebtedness to Ace which, it is alleged, approximated the $19,555.51 balance. Appellant withdrew $23,000 from Ace to provide Northwest with funds with which, according to Northwest's corporate minutes of March 18, 1965, "to pay off some of the creditors who were becoming a little impatient" and/or to "have funds available for the operation of the business." In fact, however, as mentioned, this entire amount had been conveyed to the Ace Packing Company on January 14, 1965.

The mortgage which appellant obtained from Northwest was filed on February 3, 1965. In June of 1965, over 4

months later, Northwest and its creditors agreed that a receiver ought to be appointed for Northwest, and Northwest made an assignment for the benefit of creditors. It is the effect of the mortgage on the status of appellant's claim against Northwest which constitutes the gravamen of the instant case.

Northwest's property has been sold. However, it is undisputed that appellant preserved in the resulting proceeds whatever lien he obtained under the mortgage by an agreement to this effect entered into by the parties on August 5, 1965.

Plaintiff, assignee of Northwest's assets under the assignment for the benefit of creditors, instituted this action to determine the amount of appellant's claim against Northwest and whether such claim is entitled to priority. The trial court, sitting without a jury, ordered the note and mortgage from Northwest to appellant set aside and annulled. It found that appellant has a claim as a general creditor against Northwest of $19,555.51, less payments already received of $3,957.38. It is from these determinations that this appeal is prosecuted.

Two issues are presented to this court on appeal: (1) Was the conveyance of the note and mortgage to appellant by Northwest a voidable preference, and (2) was this conveyance fraudulent, and thus subject to being set aside by Northwest's general creditors? We shall consider the issues in this order.

RCW 23.72.010 (3) defines a preference as

. . . a transfer of any of the property of . . . [an insolvent] corporation, the effect of the enforcement of which . . . transfer at the time it was procured, suffered, or made, would be to enable any one of the creditors of such corporation to obtain a greater percentage of his debt than any other creditor of the same class
. . . .

It is conceded by appellant that conveyance of the mortgage to him constituted a preference. However, he contends that it is not a voidable preference. We agree.

Under RCW 23.72.030, a preference may be avoided only if it is made or suffered within 4 months of the date of application for appointment of a receiver. Since the mortgage in the instant case was conveyed more than 4 months prior to the date of application for a receiver, it may not be set aside as a voidable preference. *Seattle Ass'n of Credit Men v. Hudson Mach. Co.,* 35 Wn.2d 680, 214 P.2d 681 (1950).

The second question is whether conveyance of the mortgage was fraudulent under the provisions of RCW 19.40. It will be recalled that appellant Doersam withdrew $23,000 from Ace Packing and delivered it to Northwest. Northwest, in turn, conveyed the $23,000 back to Ace. The only change which occurred as a result of these multiple transfers was discharge of any debts which Northwest owed to Ace and instatement of a debt identical in amount to those discharged with Doersam individually as creditor and holder of a first mortgage on Northwest's real property.

■ We do not believe, however, that analysis of the transactions should stop at this point. Ace is appellant's sole proprietorship. It seems to us that characterization of Ace as a separate entity from appellant is unrealistic. In substance, if not in form, appellant's financial position was not altered one iota by the various transactions in the instant case, and neither was Northwest's, insofar as discharge of debts is concerned. Before and after the transactions, Northwest remained indebted to appellant in the same amount. The only alteration was improved quality of appellant's debt by reason of the mortgage. Because courts will invariably look to the substance of a transaction, rather than its form, *see, e.g., United States v. Johnston,* 292 Fed. 491 (W.D. Wash. 1923); *Ackel v. Ackel,* 57 Ariz. 14, 110 P.2d 238, 133 A.L.R. 549 (1941), we will view the transactions as if no money had been exchanged and Northwest conveyed the mortgage to appellant on the basis of antecedent debts allegedly owed to Ace.

The issue with which we are thus confronted is whether, in light of all the facts and circumstances surrounding the

transactions, conveyance of the mortgage to appellant by Northwest in consideration of an antecedent debt allegedly owed to Ace (and therefore to appellant) was fraudulent.

Under RCW 19.40.010, the term "conveyance" includes mortgages. RCW 19.40.040 provides:

> Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

RCW 19.40.030 provides:

> Fair consideration is given for property, or obligation,
>
> . . . .
>
> (2) When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

Viewing these provisions as a whole, it can be seen that the question whether there has been a fraudulent conveyance can only be answered by resolving three additional questions: (1) Was there a conveyance, (2) was the conveyance made by one who is, or will thereby be rendered, insolvent, and (3) was there fair consideration? It is clear from RCW 19.40.010, cited above, that there was a conveyance, and it is undisputed that Northwest was insolvent. Consequently, the only remaining question is whether there was fair consideration. This question can in turn be answered only by resolving three additional questions: (1) Was the property received in good faith, (2) was the property received to secure a present advance or antecedent debt, and (3) was the advance or debt not disproportionately small as compared with the property conveyed? Because of our answer to the question of good faith, we need not consider the latter two questions.

The term "good faith" is not defined in our statute, and this court has not thus far sought to do so. Thus, it would be helpful to set forth some of the basic elements of good faith in relation to determining whether it was present or absent in the instant case.

■ There have been numerous efforts to define the term "good faith." *See, e.g.,* RCW 62A.1-201(19); *Klein v. Rossi,* 251 F. Supp. 1 (E.D.N.Y. 1966); *Smith v. Whitman,* 39 N.J. 397, 189 A.2d 15 (1963); *Gafco, Inc. v. H.D.S. Mercantile Corp.,* 47 Misc. 2d 661, 263 N.Y.S. 2d 109 (1965); 1 G. Glenn, Fraudulent Conveyances and Preferences § 295 (1940). These efforts, if viewed as a whole, seem to attribute three factors or indicia to good faith: (1) An honest belief in the propriety of the activities in question; (2) no intent to take unconscionable advantage of others; and (3) no intent to, or knowledge of the fact that the activities in question will, hinder, delay, or defraud others. Moreover, whether or not there has been good faith is to be determined by looking to the intent behind or the effect of a transaction, rather than to its form.

■ In cases in which the debtor and preferred creditors are closely related, we have held that preferred transactions (such as conveyance of the mortgage in the instant case) will be sustained only upon satisfactory proof of good faith. *Workman v. Bryce,* 50 Wn.2d 185, 310 P.2d 228 (1957). So also, it is generally held that when the same individuals control two or more businesses, the burden is on them to prove the good faith of transactions between the businesses. *Cf. Geddes v. Anaconda Copper Mining Co.,* 254 U.S. 590 (1921). In the instant case, Northwest is in fact an "incorporated partnership" of appellant and B. F. Boetcher. Furthermore, appellant is sole proprietor of Ace. Clearly, appellant, Ace and Northwest are sufficiently related to require appellant to prove that the standards of good faith as set out above were met.

There was evidence presented in the instant case which indicates that appellant exercised a considerable degree of financial control over Northwest. Furthermore, because appellant was a principal supplier as well as president of Northwest, there was little reason to conclude Northwest would act other than in appellant's best interests. The very fact that appellant seems to have controlled both Ace and Northwest, and to have engaged them in a series of circui-

tous transactions which resulted in giving appellant a singular advantage over Northwest's other creditors raises a suspicion of bad faith. It would seem that the mortgage was conveyed for the sole purpose of allowing appellant to minimize any losses he might incur because of Northwest's insolvency. This, of course, was at the expense of Northwest's other creditors. Under these circumstances, we cannot say as a matter of law that appellant met his burden of showing good faith and that therefore the trial court erred in finding conveyance of the mortgage to be fraudulent in derogation of the rights of other creditors.[1]

There is a final point which we must consider. Respondents have contested the trial court's determination that appellant is a general creditor in an amount equal to $19,-555.51 (the amount Northwest was allegedly indebted to Ace exclusive of the debt owed by the Columbia Sausage Company) less $3,957.38 (the amount repaid to appellant on his purported loan to Northwest) or $15,598.13. It is respondents' position that appellant failed to adequately prove the existence of any debt owed to Northwest by Ace, except for the $3,444.49 debt which Northwest had assumed from its predecessor, the Columbia Sausage Company. We disagree with this contention. There is ample evidence contained in Northwest's books, which were introduced into evidence, that prior to the transactions which led to the present litigation, there was an indebtedness running from Northwest and its predecessor to Ace in an amount at least equal to $23,000. However, we do feel the trial court improperly determined the amount of appellant's claim as a general creditor.

Appellant conveyed $23,000 to Northwest and Northwest conveyed this money back to Ace, appellant's sole proprie-

---

[1]This conclusion seems to be consistent with those reached in other jurisdictions. As stated in R. Baker and W. Cary, Corporations 625 (3d ed. unabr. 1959):

> In most jurisdictions . . . a preference given by an insolvent corporation to a director or officer is invalid as against creditors, at least if the interested officer or director participates in the corporate action by which the preference is granted.

torship. These transactions may be viewed in two ways: (1) no debts were discharged by the transfers because appellant and Ace are one and the same, or (2) Northwest's indebtedness to Ace was discharged but its indebtedness to appellant increased by a like amount. Whichever view is adopted, it is clear that appellant, either individually or as proprietor of Ace, has an initial claim against Northwest of $23,000.

The trial court, however, set appellant's initial claim at $19,555.51, rather than $23,000. We are at a loss in attempting to ascertain the reason for this reduction. Presumably the court concluded that the prior debt to Ace incurred by Northwest's predecessor, which equals $3,444.49 (the difference between $23,000 and $19,555.51), was discharged by the transactions referred to above. However, there is no more reason to conclude that this debt was discharged than there is to conclude that the debts incurred by Northwest in its operations were discharged. The validity of the predecessor's indebtedness is unchallenged, and appellant ought not be deprived of it. Thus, appellant's claim should be for $23,000, less, of course, the $3,957.38 already repaid to him, or $19,042.62.[2] Since the parties stipulated that in no event would appellant's claim exceed $19,042, his claim is reduced to comport with this stipulation.

The judgment of the trial court is modified to conform with our adjustments of appellant's claim, and as modified is affirmed.

It is so ordered.

DONWORTH, HUNTER, and HAMILTON, JJ., concur.

---

[2] Our independent examination of the record indicates that some of the payments made to appellant by Northwest, on the note which the trial court set aside, may have been voidable preferences. However, this issue was not raised by either party during trial or on appeal, and thus it would be improper for us to consider it at this time. *Cf. Unemployment Compensation Dep't v. Hunt,* 17 Wn.2d 228, 135 P.2d 89 (1943).