[No. 213-40668-2.    Division Two.    February 25, 1971.]

SPARKMAN AND MCLEAN COMPANY, *Plaintiff*, v. HAROLD DERBER *et al.*, *Defendants*, A. M. SCHWITALLA, *Appellant*, BALANCED INVESTMENTS CORPORATION *et al.*, *Respondents*.

342

*John R. Stair*, for appellant.

*John F. Kovarik* (of *Casey & Pruzan*), for respondents.

PEARSON, J.—This action was commenced by the plaintiff, Sparkman and McLean Company, to foreclose its mortgage on real property in Jefferson County, Washington, which will be referred to as the Port Townsend Plaza. The record title to that property was in the defendant, Harold Derber, as trustee for Universal Mercury Limited. Several additional defendants, including appellant, A. M. Schwitalla, and Ernest Jonson, receiver for Balanced Investments Corporation (BIC), claimed mortgage interests in the property. The receiver for BIC cross claimed against the defendant, Harold Derber, alleging that a conveyance on June 12, 1967 from BIC to Derber of the Port Townsend Plaza was a fraudulent conveyance. On June 12, the BIC officers disposed of the Port Townsend Plaza to a non-existent corporation called Universal Mercury Limited, which for all intents and purposes was Harold Derber.

In the matter before us, the receiver also sought to quiet title in BIC (an insolvent Washington corporation) as against appellant, A. M. Schwitalla, who claimed under a promissory note secured by a mortgage[1] on the subject property in the sum of $7,500.

The judgment appealed from quiets title in the receiver as against appellant (and others), declares appellant's mortgage void, and declares the promissory note void, as not given for valid consideration. No other parties are involved in the appeal. The question of priorities is not involved,

---

[1] Appellant's note and mortgage were duly executed by the president and secretary of BIC in early June, 1967, and the mortgage was recorded with the Jefferson County Auditor on June 12, 1967.

since the parties have entered into a stipulation which will control in the event this court should reverse or modify the judgment.

The facts pertinent to the issues raised on appeal are these. Appellant is a Florida attorney who specializes in the field of insolvency and corporate reorganization. In early March, 1967, he was contacted by Harrison O. Ash, who on March 4, 1967 had succeeded to the presidency of BIC. The latter corporation at this time was not insolvent, but its cash position was precarious and it was having difficulty paying its bills.

In a letter to Schwitalla, dated March 20, 1967, Ash proposed the possibility of a merger of BIC with Texas International Sulphur Company (TIS). Schwitalla was attorney for TIS and was in the process of preparing a petition for reorganization of that company under chapter 11 of the federal Bankruptcy Act (11 U.S.C.A. §§ 701 *et seq.* (1968)). He had not yet filed such petition because TIS had been unable to provide the necessary fee and costs.

After exploratory discussions, Ash, acting for BIC, employed Schwitalla, instructing him to proceed on behalf of TIS with the chapter 11 proceedings, so that TIS could be freed of creditor pressures, allowing it to develop some sulphur concessions which it held in Mexico; then through a merger with BIC, new financing could be arranged.

On April 3, 1967 Ash sent appellant a BIC check covering the TIS chapter 11 filing fee and those proceedings were shortly thereafter commenced, and continued in the U.S. District Court for the Southern District of Florida, where the proposed plan was confirmed on January 3, 1968.

It seems clear from the evidence that appellant commenced the chapter 11 proceedings in Florida in April, 1967, at a time when BIC was still solvent. However, its cash position continued to worsen. Shortly after Ash had succeeded to the presidency, BIC had exchanged one of its assets, Kent Valley Industrial Park complex, for a shopping center in Port Townsend. The shopping center was not realizing enough net income and the first mortgagee

(Sparkman & McLean Company) was holding ·virtually all of the rental collections to satisfy its claim. Likewise, debenture bonds which had been sold in a public offering were maturing and many holders were demanding cash instead of preferred stock in BIC. Schwitalla was in continuing telephonic consultation on this and other difficulties associated with BIC.

On June 7, 1967, Ray S. Adiel was elected president of BIC and on June 9, 1967, Schwitalla sent a new statement for services for confirmation by the new management. At the same time, Schwitalla requested and was sent mortgage and promissory note forms for use in securing his fees. His stated reason was that he wanted confirmation of his employment by the new management. The mortgage covered a portion of the Port Townsend Plaza. Schwitalla filled in the blanks on the mortgage in Miami and returned it to Washington for execution and recording, which was accomplished on June 12, 1967. A journal entry reflecting the issuance of the note and mortgage appears on the BIC books. There is no question that BIC was insolvent at the time appellant received the note and mortgage.

Subsequently, the assets of BIC passed into the hands of the respondent receiver. There was no direct evidence that appellant was hired as general counsel for BIC. His employment was limited to the "cleaning up" of TIS via the chapter 11 proceeding, to make a future merger of the two companies feasible, and to make new financing possible. However, he did discuss with corporate officers by telephone financial matters pertaining to BIC and he had knowledge of and prepared rough drafts of legal instruments pertaining to a transaction with Universal Mercury Limited, a proposed, but still non-existent corporation, which transaction was found to be fraudulent by the trial court. (This finding of fraud is unchallenged in this appeal.) There was also no evidence presented relating to the reasonable value of appellant's services.

The trial court found and concluded that appellant's mortgage was void as a fraudulent conveyance under the

Uniform Fraudulent Conveyance Act. (RCW 19.40.010 *et seq.*) It also found and concluded that the mortgage was not a valid and binding act of the corporation when it was executed and that the promissory note was not supported by valid consideration. The adequacy of the findings entered in support of the conclusions are challenged by appellant as well as the lack of evidence to support the findings.

Inasmuch as BIC was insolvent at the time the challenged note and mortgage were executed, we must turn first to the pertinent provisions of the Uniform Fraudulent Conveyance Act:

RCW 19.40.040 provides:

> Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred *without a fair consideration.*

(Italics ours.)

Fair consideration is defined in RCW 19.40.030:

> Fair consideration is given for property, or obligation,
> (1) When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or
> (2) When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

■ Under RCW 19.40.070 conveyances are also fraudulent if made with "actual intent" to hinder, delay or defraud creditors. We note that with respect to this statute, not only must the transferor (BIC) have had the necessary "actual intent" to defraud creditors to denominate the transaction as fraudulent, but the transferee (appellant) must also have knowledge of such intention. His knowledge need not be actual knowledge, but he may be charged with such knowledge where he is aware of facts or circumstances which would put him on inquiry leading to a discovery of such fraudulent intent. Mere suspicion is

not sufficient to charge the transferee with inquiry and knowledge. *See Columbia Int'l Corp. v. Perry,* 54 Wn.2d 876, 344 P.2d 509 (1959).

The findings and conclusions of the trial court are not clear as to whether or not appellant's mortgage was deemed fraudulent by virtue of RCW 19.40.040 (lacking fair consideration) or RCW 19.40.070 (actual intent to defraud) or both. Findings of fact 13, which appellant challenges, provides:

> That at all times, A. M. Schwitalla knew or ought to have known that any alleged work done on Texas Sulphur International was not for the benefit or account of BIC, but for the personal account of another, and was of no actual or potential benefit to said corporation.

We think that such a finding, if justified by the evidence, would be sufficient to support a conclusion that the conveyance (mortgage) was fraudulent as not "received for fair consideration" (in good faith) under RCW 19.40.040 and would also be sufficient to support a conclusion of an actual intent to defraud under RCW 19.40.070.

Since this appeal is largely a factual appeal, we are presented with the initial problem of determining both the burden and the quantum of proof necessary to avoid a conveyance under either of these sections of the Uniform Fraudulent Conveyance Act.

The prior cases concerned with this problem have not precisely differentiated the *good faith* requirement which is incorporated into the statutory definition of fair consideration by RCW 19.40.030 and RCW 19.40.040 from the actual *intent to defraud* requirement of RCW 19.40.070.

In many of the cases, the court has analyzed fair consideration only in terms of whether or not the value of services given to the insolvent party were reasonably commensurate with what it received in exchange. If so, it was assumed that the conveyance to be avoided must establish an *actual intent to defraud* under RCW 19.40.070. By and large, the *good faith* aspect of fair consideration has not until very recently been explored. In *Manello v.*

*Bornstine,* 44 Wn.2d 769, 270 P.2d 1059, 45 A.L.R.2d 494 (1954), relied upon by appellant, the creditor of a defunct partnership attempted to set aside a bill of sale which had been given by one of the partners to pay for past and future legal services. In reversing a decision of the trial court that the transfer was fraudulent, the Supreme Court stated at page 773:

> If there is a reasonable relationship between the value of these legal services and the value of the bill of sale, then there was a "fair consideration," under the statute noted above. [Referring to RCW 19.40.040.]

Then, at page 774 the court stated:

> [T]hat an assignment of property to attorneys in payment for services rendered and to be rendered to a person charged with a crime, to the extent of a reasonable fee, is made for a fair consideration, and is not, in the absence of a showing of an *actual intent to defraud,* a fraudulent conveyance.

(Italics ours.) *See* 45 A.L.R.2d 500, 509 (1956) to the effect that this rule is generally accepted.

The court in *Manello* made no mention of the *good faith* aspect of fair consideration, since good faith was not specifically in issue. We think the distinction between good faith and fraud has importance in the case before us because of the rather heavy burden of proof which accompanies a showing of actual fraudulent intent. In *Workman v. Bryce,* 50 Wn.2d 185, 310 P.2d 228 (1957) and in *Columbia Int'l Corp. v. Perry, supra,* it is stated that the burden of proving actual intent to defraud under RCW 19.40.070 is a heavy one and rests upon the party alleging it. In *Columbia,* at page 881 the Supreme Court cited with approval the following statement of the rule from *Rohrer v. Snyder,* 29 Wash. 199, 206, 69 P. 748 (1902):

> Where the good faith of a conveyance is assailed, it is not enough that the evidence may cause a suspicion as to its good faith. The evidence must be clear and satisfactory, and such as convinces the mind that the conveyance is in reality fraudulent. Taken in connection with the presumption of honesty and good faith that

prevails in favor of the validity of the transactions, and the positive statement of the grantee to the effect that he was a purchaser for value and in good faith, these circumstances, as we say, fall short of these requirements."

It is not entirely clear in *Columbia Int'l Corp. v. Perry,* whether this burden and quantum of proof was being applied to RCW 19.40.040 (good faith) or to RCW 19.40.070. Since the court had previously in the opinion decided that the consideration was "fair" and avoided any reference to RCW 19.40.040, we are assuming that the burden and quantum of proof rules related to proving actual fraud under RCW 19.40.070.

In *Workman v. Bryce, supra* some additional rules are announced pertaining to the burden of proof in this type of case, although it is also not clear to which of these two sections of the act the court is referring. After acknowledging that in general the burden of proving fraud lies with the party seeking to set aside the conveyance, the court stated at 50 Wn.2d 189: "The burden shifts to the defendant to prove his good faith, when the consideration is shown to be grossly inadequate."

The court in *Workman* also stated at page 189 that transactions between relatives "must be scrutinized more closely than others, and will be sustained only upon satisfactory proof of good faith and upon a bona fide indebtedness and consideration not grossly inadequate."

We have discovered but one Washington case which specifically undertook to define what is meant by the term *good faith* under RCW 19.40.040, namely *Tacoma Ass'n of Credit Men v. Lester,* 72 Wn.2d 453, 433 P.2d 901 (1967). At page 458 the court attributes to the good faith concept:

(1) An honest belief in the propriety of the activities in question; (2) no intent to take unconscionable advantage of others; and (3) no intent to, or knowledge of the fact that the activities in question will, hinder, delay, or defraud others.

Presumably, if any one of these factors is absent, lack of good faith is established and the conveyance fails.

With reference to the burden of proof, the court also holds (at page 458) that where the same individuals control two or more businesses, "the burden is on them to prove the good faith of transactions between the businesses."

Attempting to bring these various concepts together as we must in analyzing the case before us, these general principles are developed:

(1) Under both RCW 19.40.040 and RCW 19.40.070 the burden of proof is initially upon the one seeking to set aside the conveyance. *See Workman v. Bryce, supra.*

(2) If he is seeking to prove actual intent to defraud and avoid the conveyance under RCW 19.40.070, his burden is a heavy one and is met only with "clear and satisfactory proof." *Columbia Int'l Corp. v. Perry, supra.*

(3) If he seeks to show lack of good faith so as to avoid the conveyance under RCW 19.40.040, he must prove any one or more of the three factors as set forth above is lacking by *substantial evidence.* We announce this quantum of proof for these reasons. RCW 19.40.070 appears to incorporate into it the common law requirements of fraud which have traditionally required proof by clear, cogent, and convincing evidence. If lack of good faith were collated with actual intent to defraud, there would certainly be no reason for the Uniform Fraudulent Conveyance Act to have prescribed two different grounds for vitiating a transaction with an insolvent. Secondly, the Supreme Court holds in *Columbia* that knowledge of suspicious circumstances is not enough to establish an actual intent to defraud, while *Tacoma Ass'n of Credit Men v. Lester, supra* would require as an indicia of *good faith* "an honest belief in the propriety of the activities in question." It seems certain to us that *knowledge of a suspicious transaction* will not engender an *honest belief* in the propriety of the transaction. The two notions are contradictory and we think logically subject to different quanta of proof.

(4) Under both RCW 19.40.040 and RCW 19.40.070 the burden may under certain circumstances shift to the favored creditor to prove the good faith of his transaction

with an insolvent. We have seen that one such transaction is where close relatives are dealing together (*Workman v. Bryce,* 50 Wn.2d 185, 310 P.2d 228 (1957)) and the other where the same individuals control two or more businesses which are dealing together. *Tacoma Ass'n of Credit Men v. Lester, supra.*

It is our view that another instance in which the burden of proving good faith is on the creditor who has been favored by a preference is where the transaction is between an attorney and his client. It has been held that dealings between an attorney and his client which are advantageous to the attorney are prima facie fraudulent and the burden is on the attorney to show the good faith of such a transaction. *In re Estate of Peterson,* 6 Wn.2d 294, 107 P.2d 580 (1940). We think that the fiduciary relationship between attorney and client justifies treatment for purposes of RCW 19.40.040 like that accorded to the other intimate relationships noted in the cases cited above.

We thus reach the pivotal question. Did appellant sustain the burden of proof by substantial evidence that he received the note and mortgage in good faith? When we examine the whole record, we are constrained to answer this question in the negative. The *Tacoma Ass'n of Credit Men v. Lester* case recognizes that good faith includes honest belief in the propriety of the transaction challenged. By his own testimony, Schwitalla was in frequent telephonic communication with his clients before he requested the note and mortgage challenged here. He knew that BIC was in a chaotic financial condition and that its officers were about to deal away the assets of BIC for questionable consideration. He acknowledged that before his mortgage was filed he had drafted mortgages, notes and contracts involving Universal Mercury Limited and Derber. The unchallenged finding and conclusion of the trial court was that these transactions were fraudulent.

No explanation was made as to why Florida counsel should be retained to draft instruments conveying interests in real property located in Washington. Mr. Schwitalla agreed that

local counsel should have checked these papers, since Washington law controlled the question. We think that the unusual step of using Florida counsel to draft documents of conveyance should have prompted that counsel to inquire as to why his services were sought for this purpose.

The evidence leads us to believe that even a cursory exploration would have disclosed the serious, fraudulent mess BIC had fallen into by the time of the mortgage in question. It is highly plausible, we think, that appellant demanded security for his obligation only after he had information which would lead inexorably to the conclusion that BIC was in nearly total collapse and its officers were rapidly appropriating its assets to their own uses. When Schwitalla himself testified that he knew, before the mortgage, that BIC was in dire straits and that he had been requested under unusual circumstances to draft instruments that were found to be part of a fraudulent scheme to loot the assets of BIC, we think that he failed to carry the burden of demonstrating good faith for purposes of RCW 19.40.040. Had he not consulted and advised BIC on the related fraudulent transactions prior to receipt of the mortgage, and confined his representation to the Florida services which he was legally licensed to perform, we would be inclined to uphold his mortgage. Under those circumstances, we would not think it reasonable to impute knowledge of the fraudulent conduct of the corporate officers to him. However, where, as here, he did undertake to perform services properly performed only by Washington counsel, we think the court was justified in charging him with knowledge of the internal affairs of the corporation. With such knowledge, we do not see how he could have "an honest belief in the propriety of the transaction" in which he had in good faith (initially) become involved. Therefore, the judgment setting aside the mortgage must be affirmed.

Though we agree that the trial court properly set aside Schwitalla's mortgage, we believe that it was error to take the next step and also set aside the note for lack of con-

sideration.[2] It appears to us that appellant initially undertook in good faith to perform services. At the time he was retained, there was a future potential benefit to BIC of a merger with a public company (TIS had 2,500 to 3,000 shareholders). BIC was private in the sense that its capital stock was closely held. Such a merger would improve the financing potential of BIC and financing was exactly what the corporation needed in March of 1967 when appellant was retained. Once the services were commenced, appellant could hardly have abandoned the legal proceedings. Appellant completed the services. We think that he ought to be entitled to file a claim with the receiver as a general creditor of BIC for the reasonable value of the services performed.

The judgment is affirmed insofar as it voids appellant's mortgage, but reversed insofar as it invalidates appellant's claim for the reasonable value of his services.

ARMSTRONG, C.J., and PETRIE, J., concur.

---

[2]The trial court did not find that appellant's promissory note was a fraudulent "obligation" under RCW 19.40.040.