**EXPLOSIVES CORPORATION OF AMERICA, Plaintiff,**

v.

**GARLAM ENTERPRISES CORPORATION and Federal Insurance Company, Defendants.**

**Civ. No. 72–0001CC.**

United States District Court, D. Puerto Rico.

Aug. 8, 1985.

Salvador Antonetti, Fiddler, Gonzalez & Rodriguez, San Juan, P.R., for plaintiff.

Charles A. Cordero, Cordero, Colon & Miranda, Old San Juan, P.R., for Garlam Enterprises Corp.

## OPINION AND ORDER

CEREZO, District Judge.

Rockcor, Inc. (Rockcor) formerly known as Rocket Research, Inc., a publicly held corporation incorporated in the State of Washington and having its principal place of business in that state, has been summoned before this court to substitute Explosives Corporation of America, (Explo) judgment-debtor and plaintiff herein, as its

successor in interest. Rockcor was duly served with process on September 1, 1983 in Washington. After many continuances, an evidentiary hearing was set for June 28, 1984. On that date, however, the parties informed that there was no need for a hearing and submitted the issue by documentary evidence and legal memoranda.

The facts which originated the present controversy between the parties are as follows. As a result of a contract negotiated between Explosives Corporation of America (Explo), a subsidiary of then Rocket Research Corporation, and Garlam Enterprises Corporation (Garlam) for the pre-splitting and blasting operations required in the construction of a certain part of Las Américas Expressway in Puerto Rico, Explo filed this lawsuit against Garlam and its surety, the Federal Insurance Company, on January 3, 1972 alleging breach of contract and requesting payment of $300,000 in damages. Garlam filed a counterclaim also alleging breach of contract and demanding $4,120,000 in damages. After four years of litigation the trial of the case was bifurcated and the issue of liability under the contract was tried without a jury on January 26–30, 1976. Prior to any decision on the issue of liability but after trial on that issue Excoa, Inc. (Excoa), Explo's successor by merger, was dissolved by consent of its sole stockholder, Rocket Research Corp., on October 29, 1976. On that date certain lands known as the Preston property, which had belonged to Explo and then to Excoa by reason of the merger, were conveyed to Rocket Research Corp. in lieu of foreclosure of the mortgage given on October 8 to secure payment of a debt in the amount of $5,575,029.00 owed by Excoa to Rocket Research Corp. In a separate document the remaining assets of Excoa were transferred to Rocket Research Corp. in partial satisfaction of a debt Excoa had with Rocket Research Corp. Among the "property" so conveyed was "all of [Excoa's] interest in and to that lawsuit pending in the United States District Court, [t]he District of Puerto Rico being Cause No. 1–72 entitled Explosives Corporation of America vs. Garlam Enterprises Corpora-tion and Federal Insurance Company, General Insurance Company of North America, third party defendant." Excoa's dissolution, like Explo's merger, was not notified to Garlam or to the court. Thereafter, on March 30, 1977, this Court, by Senior District Judge W.A. Bootle of the Middle District of Georgia sitting by designation, decided the issue of liability in favor of Garlam and against Explo.

On September 9, 1977 Garlam filed a motion for substitution of parties under Rule 25(c) stating that it had found out about Explo's dissolution from answers to its interrogatory submitted in preparation for the hearing on damages and requesting that Explo be substituted by Rockcor, Inc. On November 10, 1977, however, Garlam filed an amended third-party complaint including Rockcor as a third-party defendant alleging that this corporation was Explo's alter ego since 1971. Rockcor's motion to dismiss the complaint for lack of personal jurisdiction was first denied by Judge Pesquera on July 22, 1979. On reconsideration, the motion was granted and judgment was entered on October 30, 1979 dismissing the complaint as to Rockcor. The Court then held that Rockcor was not "doing business" in Puerto Rico within the interpretation of *International Shoe v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and could not be subjected to suit in this jurisdiction. An appeal of that judgment was dismissed for lack of jurisdiction under 28 U.S.C. Section 1291 on December 20, 1979. Thereafter, upon Garlam's motion for reconsideration, the Court reviewed the matter once more and concluded that jurisdiction could not be asserted over Rockcor for purposes of the amended third-party complaint since its contacts with this forum occurred after the commencement of the action and to consider Explo's contacts as binding on Rockcor would be tantamount to a determination that Rockcor was Explo's *alter ego* since the beginning of this action. Nevertheless, the court considered the possibility of bringing Rockcor into the action in substitution of Explo as its successor in interest and determined

that Rockcor's involvements with the forum upon acquiring Explo's interests in this proceeding would be sufficient for purposes of examining if Rockcor was Explo's successor in interest and should be made a party in substitution of Explo. Given the circumstances of the case and the fact that Rockcor knew about the case having monitored the proceedings since it acquired Explo's interests in it, the Court in fairness to Garlam allowed it to move for substitution under Rule 25, Fed.Rules of Civ.Proc. It is Garlam's motion for substitution and Rockcor's opposition thereto that are before us now for disposition.[1]

■ In its motions opposing substitution under Rule 25 Rockcor insists that its acquisition of Excoa's assets upon dissolution and its monitoring of this case since then are insufficient contacts with this forum to justify exercising personal jurisdiction over it. As explained in our Opinion and Order of November 16, 1982 the considerations involved to determine whether jurisdiction lies for purposes of filing a claim directly against a party are different from those involved in a determination on whether a party should substitute as its successor in interest the original party, against whom a claim was filed or judgment entered. Jurisdiction will not be premised on the mere acquisition of assets by the successor but on the existence of certain conditions which can make the purchaser of those assets a successor or an extension of the original party. As such, it will be liable for any obligations incurred by the original party within the forum. Jurisdiction would exist over the successor to the extent that there was jurisdiction over the original party.

■ Generally, "a purchasing corporation does not assume the liabilities of its predecessor unless (a) the purchaser expressly or implicitly agrees to assume liability; (b) the purchase is a de facto consolidation or merger; (c) the purchaser is a mere continuation of the seller; or (d) the transfer of assets is for the fraudulent

purpose of escaping liability" *Meisel v. M & N Modern Hydraulic Press Co.*, 97 Wash.2d 403, 645 P.2d 689, 690 (1982) citing 15 W. Fletcher, Cyclopedia of Law of Private Corporations, Secs. 7118–7123 (rev. ed. 1973). See also *Hall v. Armstrong Cork, Inc.*, 103 Wash.2d 258, 692 P.2d 787, 789–790 (1984); *Martin v. Abbott Laboratories*, 102 Wash.2d 581, 689 P.2d 368, 384 (1984). This rule has been accepted by the majority of American jurisdictions. See *Dayton v. Peck, Stow & Wilcox Co.* (Pexto), 739 F.2d 690, 692 (1st Cir.1984) and *Cashar v. Redford*, 28 Wash.App. 394, 624 P.2d 194, 195 (1981).

■ Garlam contends that by acquiring *all* of Excoa's interest in this lawsuit Rockcor expressly assumed liability for the counterclaim. This contention is based on its interpretation of the word "interest" as encompassing both beneficial as well as adverse interests. It appears, however, from the contract itself, as well as from the deposition of Rockcor's Chairman of the Board, Mr. George Sutherland, that this was not the meaning given to the term by the parties to the bill of sale. The "interest" in this lawsuit conveyed to Rockcor by the bill of sale was one of several properties conveyed in partial satisfaction of Excoa's debts to Rockcor. This "interest" was one of Excoa's assets at the time of the transaction. Clearly, what was transferred to Rockcor was Excoa's right to collect from Garlam the amounts claimed by Explo in this lawsuit. Aside from the fact that we cannot ascribe property qualities to Garlam's counterclaim against Explo, other than as a property of Garlam, it is dubious that a creditor would accept a debt in payment of its credit. Rockcor did not expressly assume this liability and its acquisition of Excoa's interest in this lawsuit cannot, by itself, justify imposing liability against it for the amounts due by Explo on the counterclaim. For the same reasons it cannot be said either that Rockcor impliedly assumed that liability.

---

1. On November 16, 1982 an order was issued adopting the Special Master's findings on the issue of damages and judgment in favor of Garlam was entered on that date for the total sum of $2,423,177.00 without costs, pre-judgment interest or attorney's fees.

■ Garlam argues that upon acquiring all interests in this suit Rockcor accepted the terms of the subcontract between Explo and Garlam. Quoting article XX of that agreement which provides that it would "bind the heirs, executors, administrators, successors, holding companies and assigns of the parties hereto" it claims that Rockcor became an "assign" of Explo and is now responsible for the latter's breach in the performance of the contract. The quoted clause can only mean that persons within the categories mentioned can be held responsible for any breach of contract committed by the original parties to the contract. See 4 Corbin on Contracts, section 871, note 80, and cases cited therein, especially *George v. Richards*, 361 Pa. 278, 64 A.2d 811, 813 (1949). By acquiring all interests in this action, however, Rockcor did not acquire the contract as an "assignee," which under the provisions of the same could not be assigned without Garlam's written consent and which had been terminated upon Garlam's taking over and completing the subcontractor's work, but merely acquired an action for damages arising from an alleged breach of contract. Cf. 4 Corbin on Contracts, Section 886, as to assignability of such right of action. Rockcor is not an "assignee" of the subcontract and is not liable in such capacity for Explo's breach. Neither was Rockcor a "holding company" of Explo within the strict meaning of such term. See 6A Fletcher Cyc.Corp. (Perm.Ed.) Section 2821.

Garlam does not allege that the dissolution of Excoa and the sale of its assets to Rockcor was in fact a merger or consolidation of that corporation with Rockcor. It claims, however, that by paying for and controlling this litigation, without notice to the court and under Explo's name, it became a "mere continuance" of the dissolved corporation. Having acquired all of Excoa's interests in this action Rockcor, as sole stockholder of a dissolved corporation, could, however, assume the costs and control of the litigation in order to protect Excoa's interests. See RCWA Section 23A.28.250.

■ The "mere continuation" exception to the general rule that the purchaser of assets of a corporation is not liable for his predecessor's liabilities "is less clearly defined than the other ... [exceptions]." *Parson v. Roper Whitney, Inc.*, 586 F.Supp. 1447, 1450 (W.D.Wis.1984). It has been said that " '[t]he key element of a 'continuation' is a common identity of the officers, directors and stockholders in the selling and purchasing corporation.' " *Dayton*, 739 F.2d 693, quoting from *Leannais v. Cincinatti, Inc.*, 565 F.2d 437, 440 (7th Cir.1977). See also *Cashar*, 624 F.2d 196. Other factors such as continuation of the seller's business practices and policies and "the sufficiency of consideration running to the seller corporation in light of the assets being sold" have also been considered. *Id.* Although Rockcor and Excoa had certain officers and directors in common at the time of dissolution, complete identity did not exist in the person of the vice president of each of the corporations and in a number of directors of Rockcor who were not directors of Excoa. It may be argued that there was identity of ownership since Rockcor was the sole stockholder of Excoa and its shareholders indirectly owned Excoa. Nevertheless, to find that continuity exists merely because there was common management and ownership, without considering other factors, is to disregard the separate identities of the corporations without the necessary considerations which justify such an action. See 1 Fletcher Cyc. Corp., (Perm. Edition) section 43.20. Although common management and ownership are *a* crucial element in determining "continuation," other factors must be considered in order to impose liability upon the successor. Aside from the fact that control of Excoa by Rockcor to such extent as to make the former an "alter ego" of the latter has not been proven, the doctrine of disregarding the corporate entity is distinct from the question of a successor's liability, which is the issue presented by Garlam's motion. See 1 Fletcher Cyc. Corp. (Perm.Ed.) Section 48. See also *Meisel*, 645 P.2d at 692 citing Harris, Washington's Doctrine of Corporate Dis-

regard, 56 Wash.L.Rev. 253, 253 n. 3 (1981), and 1 W. Fletcher, Private Corporations, Section 48, at 276 (rev. ed. 1974).

■ In this case the seller corporation dissolved and its trade name and operations were discontinued. Although Rockcor has expanded its business affairs, it is uncontroverted that it did not continue Excoa's business of manufacturing and distributing explosive products. Garlam did not prove that the consideration paid for Excoa's assets was insufficient. The evidence showed that at the time of its dissolution Excoa owed Rockcor approximately $5,600,000. Garlam alleged that the conveyance to Rockcor of the Preston property was made without fair consideration because no appraisal was made of the properties prior to the transfer. Although it may be a good practice to require an appraisal before a certain property is conveyed in payment of debts, this, by itself, would not show lack of fair consideration. The evidence showed that several years later an appraisal was made and the value of the property was estimated at $550,000, approximately $140,000 more than the book value. In 1980, that is almost four years after the dissolution of Excoa, this property was sold for $1,120,000. Even if we consider this as the true value of the Preston property, we cannot determine that Excoa's assets, the main asset being these lands, were worth more than the $5,600,000 owed by Excoa to Rockcor. Garlam did not dispute the existence of this debt nor its amount. On this record we cannot conclude that Rockcor is a "mere continuity" of Excoa.

Garlam also contends that the transfer of Excoa assets to Rockcor was for the fraudulent purpose of avoiding liability on its counterclaim. Citing a fifth exception to the general rule that a purchaser of a corporation's assets does not thereby become liable for its debts, Garlam argues that Rockcor is not a "good faith" purchaser and should, therefore, be held responsible for Excoa's liabilities. This fifth exception applicable where "some of the elements of a purchaser in good faith [are] absent," is encompassed within the fourth exception quoted above which involves a fraudulent transaction. See: *Dayton*, 739 F.2d at 692, n. 1. Section 19.40.040, RCWA quoted by Garlam in support of its contention that the transfer of Excoa's assets to Rockcor was fraudulent, provides that "every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."

The "good faith" aspect of the exception is included in the Washington's statute defining "fair consideration" thus:

Fair consideration is given for property, or obligation,

(1) When in exchange for such property, or obligation, as a fair equivalent therefore, *and in good faith*, property is conveyed or an antecedent debt is satisfied, or

(2) When such property, or obligation is received *in good faith* to secure a present advance or antecedent debt in an amount not disproportionately small as compared with the value of the property, or obligation obtained. RCWA Section 19.40.030 (emphasis ours).

It is undisputed that upon its dissolution immediately following the transfer of its assets to Rockcor, Excoa was an insolvent corporation. As stated above, however, neither the true value of Excoa's assets was shown nor that its assets were worth more than Excoa's indebtedness to Rockcor. The validity of that debt has never been questioned. Garlam argues, notwithstanding, that Rockcor did not purchase Excoa's assets in good faith when it "stripped" its subsidiary of all its assets to the prejudice of innocent creditors such as itself and when it did not notify Garlam its intention to dissolve Excoa. In addition, it claims that Rockcor cannot be considered a purchaser in good faith since it caused to be filed deceptive articles of dissolution with the Washington State authorities. The case of *Harrison v. Puga*, 4 Wash.

App. 52, 480 P.2d 247 (1971) cited in support of Garlam's contention that a stockholder who strips a corporation of all assets transfers the same to its own account and becomes liable for the debts of the corporation is inapplicable to the instant situation which involves a successor liability claim. In that case, the transfer of the corporation's assets to the stockholder was made without any apparent consideration and with the stockholder's clear intent to disregard the corporation's separate entity by treating its assets as his own. By contrast, evidence of corporate disregard has not been presented in this case. Moreover, Rockcor's acquisition of Excoa's assets was in its capacity as creditor of the corporation, in payment of debts whose validity has not been disputed.

■ To establish "good faith," as used in section 19.40.030 of the Washington revised statutes, the party carrying the burden of proof must show one or more of the following three factors by substantial evidence:

(1) an honest belief in the propriety of the activities in question;

(2) no intent to take unconscionable advantage of others; and

(3) no intent to, or knowledge of the fact that the activities in question will hinder, delay, or defraud others. *Sparkman and McLean Co. v. Derber*, 4 Wash.App. 341, 481 P.2d 585, 591 (1971), quoting *Tacoma Association of Credit Men v Lester*, [72 Wash.2d 453], 433 P.2d 901, at 904 (Wash.1967).

Although the burden of proof is initially upon the party alleging fraud, under certain circumstances this burden has been found to shift to the purchaser to prove the good faith of his transaction with an insolvent. *Sparkman v. McLean*, 481 P.2d at 591. One such circumstance has been held to be where the same individuals control two or more businesses which are dealing together. *Id.*, see *Tacoma Association*, 433 P.2d at 904–905. Although we have previously stated that control of Excoa by Rockcor to a degree which would justify disregarding the separate entity of these corporations has not been shown and is not

in issue, sufficient control existed as would justify requiring Rockcor to prove good faith in the transaction. See *Tacoma Association*, 433 P.2d at 904–905.

■ Rockcor's Chairman of the Board, Mr. George Sutherland, stated in an affidavit submitted in evidence that the decision to dissolve Excoa was unrelated to this case and that it took place before any judgment had been rendered in favor of Garlam, at a time when the corporation expected Explo to prevail against Garlam. In his deposition, Sutherland expressed that same view and further stated that one of the purposes of the transaction was to benefit from certain tax consequences resulting from Excoa's liquidation. This was the reason for culminating the same before the end of the fiscal year, which ended on October 31, 1976. Evidence more contemporary to the transaction, a letter of October 8, 1976 to Rockcor's Vice President and Treasurer at the time, Mr. Robert G. Sanderson, from the corporation's financial counselor shows that this was, in fact, considered in making the decision to dissolve Excoa.

There is nothing in the record to dispute the Sutherland statements and the Court cannot pass upon the credibility of this witness, the parties having waived the hearing and submitted the issue on the documentary evidence alone.

Citing *Rainier National Bank v. Mc Cracken*, 26 Wash.App. 498, 615 P.2d 469, 474–475 (1980), Garlam alleges that sufficient "badges or indicia of fraud" exist to conclude that the conveyance of Excoa's assets to Rockcor was fraudulent. These "badges" of fraud are, according to Garlam, the insolvency of Excoa, the lack of consideration for the conveyance, the relationship between the contracting parties, the pendency of this suit, the secrecy or concealment of the transaction, departure from the usual method of business and the transfer of Excoa's entire estate. See *Rainier National Bank*, 615 P.2d at 474. Although some but not all of these circumstances are present in this case, the transaction has not been shown to be fraudu-

lent. This is so in light of Rockcor's evidence showing honest belief that Explo would prevail in its claim against Garlam and that its motivations in the transaction were not related to this suit. It cannot be overlooked that Garlam's credit, if any, was but a contingent claim at the time of the transaction. Moreover, it cannot be stated that Rockcor tried to take "unconscionable advantage" of others by securing its multimillion credit, something Garlam could have done also by attaching property of Explo to secure payment of the judgment ultimately entered. Rockcor having showed "good faith" in the transaction with Excoa, and lack of a fair equivalence in the value of the properties conveyed in satisfaction of the debt not having been shown by Garlam, it must be concluded that fair consideration was given for the conveyance and that the same was not fraudulent within the meaning of section 19.40.040, RCWA.

None of the exceptional circumstances for imposing liability upon a purchasing corporation for the debts of its predecessor having been shown, the Motion for Substitution of Parties is hereby DENIED.

SO ORDERED.