# United States Court of Appeals
## For the First Circuit

Nos. 14-1334, 14-1518

ÁNGEL EDGARDO RODRÍGUEZ-MIRANDA,

Plaintiff, Appellee,

v.

MALIK BENIN; COQUICO, INC.; 18 DEGREES NORTH, LLC;
ACQUANETTA M. BENIN,

Defendants, Appellants.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, U.S. District Judge]

Before

Torruella, Lipez, and Thompson,
Circuit Judges.

Eddi Z. Zyko for appellants.
Jane A. Becker Whitaker for appellee.

July 13, 2016

**THOMPSON**, **Circuit Judge**. This appeal represents yet another installment in the protracted employment dispute between two former colleagues — plaintiff-appellee Ángel Edgardo Rodríguez-Miranda (Rodríguez) and defendant-appellant Malik Benin (Benin). Here, we must contend with the apparent efforts of Benin to avoid paying a judgment entered against his company, Coquico, Inc. (Coquico), in favor of Rodríguez for $348,821.23. Benin evidently sought to avoid the judgment by transferring Coquico's assets to his mother, Acquanetta M. Benin (Acquanetta), and to a new company, 18 Degrees North, LLC (18 Degrees North). The principal issue on appeal is, in essence, whether the district court erred in using Federal Rule of Civil Procedure 25(c) to hold Coquico, Benin, Acquanetta, and 18 Degrees North (collectively, appellants) liable for the judgment originally entered against Coquico only. Benin also challenges the district court order finding him in civil contempt and imposing a $5,000 sanction. After careful consideration of appellants' arguments, we affirm.

## I. HOW WE GOT HERE

This case has an unusual, somewhat circuitous history; therefore, it is necessary for us to go into some detail in laying out its factual and procedural background.

The saga began in 2000 when Rodríguez left his position in the Puerto Rico Federal Affairs office in Philadelphia, Pennsylvania, and was subsequently recruited by Benin to join

Benin's Pennsylvania-based[1] start-up venture — Coquico.

Coquico manufactures and distributes plush-toy animals, including a line of toys designed to resemble a small brown tree frog that is adored in Puerto Rico — the coquí. Because the company was a start-up, Rodríguez, who oversaw the company's growth in Puerto Rico while Benin supervised from afar in Philadelphia, initially agreed to lend the company money (the record does not make clear what these loans were for) and to forego salary and incentive payments until the business got on its feet.

## A. The Relationship Sours: A Tale of Two Lawsuits

Rodríguez worked for Coquico for four years, but became disgruntled when Benin continued to withhold compensation and loan repayments from him even as the company began making money. Eventually, Rodríguez left Coquico and filed a collection claim against the company in San Juan Superior Court for money owed.[2] And that's not all. After filing suit, Rodríguez approached Coquico's suppliers and began to distribute apparently similar plush-toy coquís himself in Puerto Rico through his own company, Identiko, Inc. (Identiko). In response to this upstart venture, Coquico sued Identiko and Rodríguez in federal court in Puerto

---

[1] Coquico is a Pennsylvania corporation with a registered office in Wayne, Pennsylvania. Benin is its Chief Executive Officer and principal shareholder.

[2] Rodríguez alleged that Coquico owed him $165,000 in salary and expenses, $119,000 in commissions, and $99,402 in unpaid loans.

Rico for, among other things, copyright infringement, alleging that Rodríguez and Identiko had infringed Coquico's copyrights for the coquí plush-toys (more on this later).  For the reader's ease, we refer to this as the "copyright action" from here on out.

After a preliminary injunction hearing in the copyright action, the district court entered an order enjoining Rodríguez and Identiko from continuing to market the plush-toy coquís.[3] Coquico then sought contempt sanctions and damages before the district court.

In turn, Rodríguez dismissed, without prejudice, his collection claim, which had still been pending in San Juan Superior Court, and re-filed the action in federal court in Puerto Rico against Coquico, Benin, and Benin's wife, Phillipa Ashby, seeking payment of his promised wages and loan money.[4]  It is this "collection action" that is the case at issue here.

---

[3] Rodríguez and Identiko filed an interlocutory appeal challenging the injunction, and this court affirmed.  See Coquico, Inc. v. Rodríguez-Miranda, 562 F.3d 62, 65 (1st Cir. 2009).

[4] Rodríguez initially sought to pursue these claims as a counterclaim against Coquico in the copyright action, but the district court denied his request to amend his answer.  In his complaint in the collection action, Rodríguez initially included a claim for defamation, alleging that Benin had knowingly and falsely accused Rodríguez of using his political influence (as a member of the Puerto Rico House of Representatives since 2008) to gain an advantage in the copyright litigation.  Rodríguez later voluntarily dismissed his defamation claim.

Both cases moved forward in parallel proceedings before different district judges.[5] In the copyright infringement action, the district court found that "Identiko and Rodríguez infringed [Coquico's] copyrights and that [Coquico was] therefore entitled to recover damages." Coquico, Inc. v. Rodríguez-Miranda, No. 07-1432 JP, 2010 WL 3372388, at *3 (D.P.R. Aug. 24, 2010). But Coquico "elected to seek statutory damages in lieu of actual damages," and, on August 24, 2010, the district court awarded Coquico $15,000 based on the evidence presented at the bench trial. Id. at *2-3.

As for the collection action, it went to trial, and, on July 27, 2011, a jury found for Rodríguez against Coquico only[6] in the amount of $348,821.23.[7] Coquico did not appeal, and, on September 19, 2011, the district court issued a writ of execution of judgment.

### B.  Post-Judgment Shenanigans

Nearly a year later, on August 21, 2012, Rodríguez, who

---

[5] Judge Jaime Pieras, Jr. presided over the copyright action, but after final judgment was entered, the case was later assigned to Judge Fusté for limited post-trial matters.

[6] The record does not make clear why the other parties — Benin and his wife, Phillipa Ashby — were not also listed on the judgment.

[7] The jury awarded $71,554.23 for outstanding loan payments, $187,832 in salary, $32,085 in commission payments, and $57,350 in reimbursements for expenses.

had been unable to recover one dime on his judgment, electronically filed a motion asking the district court to order the sale of Coquico's assets to satisfy the judgment.[8]  Accordingly, on September 11, 2012, the district court approved the seizure and sale of Coquico's copyrights and trademarks to satisfy the debt.[9]

In June 2013, Coquico received notice from the district court that the sale of its intellectual property had been scheduled for July 11, 2013.  On July 8, 2013, three days before the scheduled sale, Benin's mother, Acquanetta, who was not represented by counsel, sought to intervene in the collection action and to stay execution, claiming that she was the record owner of the property set for sale having previously purchased the relevant intellectual property from Coquico years before.  Notably, in support of her motion to intervene, Acquanetta filed notarized transfer documents

---

[8] When motions are filed electronically using the CM/ECF system, notifications are automatically sent to all parties in the case who have provided an e-mail address.  According to district court rules, the court sends pro se litigants who are not registered to use the CM/ECF system paper copies of all documents filed in their case.

[9] The district court approved the sale of the same copyrights and trademarks that had been at issue in the copyright action, namely: (1) "Comun by Coquico" Copyright number VA0001075653; (2) "Coquico: We Sing" Copyright numbers TX0005550274, TX0005535397; (3) "Musical plush toy frog named 'Comun' A commissioned work for Coquico, Inc. by Michael Tian" Copyright number V3473D525; (4) "Rufus/by Coquico, Inc." Copyright number VA0001138519; (5) "Tata/by Coquico, Inc." Copyright number VA0001138520; and (6) Trademarks: Reg. Nos. 2,534,754; 2,560,104; 2,541,228.  For clarity, we will refer to the copyrights and trademarks collectively as "intellectual property."

that seemed to show that Benin, acting as "CEO & Founder" of Coquico, had assigned the intellectual property to her in 2006[10] — over a year before Coquico filed its copyright action against Rodríguez and Identiko. To complicate matters further, Acquanetta's filings indicated that the copyright assignment had not been recorded with the United States Copyright Office until June 4, 2012 — more than six years after it was ostensibly assigned to her and, important for our purposes today, a year after Rodríguez obtained judgment against Coquico in the collection action.

In tandem with his mother's filing in the collection action, Benin moved pro se[11] to likewise stay the sale[12] of the

---

[10] The text of the purported copyright assignment actually contains no date but the second page of the document, which contains the signatures, includes a notary public signature dated January 23, 2006.

[11] According to the district court docket, Coquico's and Benin's trial attorney was terminated as of October 3, 2011, a few weeks after the writ of execution of judgment was entered. No other attorney entered an appearance on their behalf. Both Benin's and Acquanetta's motions to stay were identified as being pro se motions. Rodríguez pointed out to the district court, however, that Benin's motion to vacate appeared to have been written and signed by an attorney. In a subsequent bankruptcy proceeding, discussed in more detail below, Benin acknowledged that the motions were in fact prepared by Coquico's bankruptcy attorney, Kahiga A. Tiagha, and mailed for filing from his law office in Philadelphia. In re Coquico, Inc., 508 B.R. 929, 935 (Bankr. E.D. Pa. 2014). The bankruptcy court mused that these attorney filings in pro se clothing may have constituted "fraud on the court."

[12] Unlike Acquanetta, Benin, if you recall, was already a party to the action and did not need to move to intervene. To review, although the judgment was entered against Coquico only,

intellectual property, arguing, for the first time, that Acquanetta was an "indispensable party to the action" because she, not Coquico, owned the property.[13]  In short, despite Benin's prior, consistent representations, not only in his copyright action but also in the collection action, that Coquico — not Acquanetta — was the owner of the copyrights, Benin now asserted that his mother had "purchased" the intellectual property back in 2006.  Therefore, he claimed that she was a necessary party to the collection action with "an interest relating to the subject of the action," Fed. R. Civ. P. 19(a)(1)(B), who had been improperly excluded.

The district court denied both Acquanetta's motion to intervene and Benin's motion to stay by paper order, explaining that it would "not allow intervention on a matter concluded by judgment a long time ago," especially when the public auction for the sale of the intellectual property was set for the next day.

At the time it docketed this order, on July 9, 2013, the district court was not aware that just that day Coquico, represented by counsel, had filed for bankruptcy under Chapter 7 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq.,

---

Coquico, Benin, and Benin's wife, Phillipa Ashby, had all been parties to the collection action.

[13] Benin also argued that Rodríguez had failed to properly serve the defendants — Benin, his wife, and Coquico — with Rodríguez's motion requesting the sale of Coquico's intellectual property.  But Rodríguez's motion was filed electronically using the CM/ECF system.

- 8 -

in the bankruptcy court for the Eastern District of Pennsylvania. Upon learning of the filing, the district court stayed the case pending resolution of the bankruptcy proceeding.

### C.    A Detour to Bankruptcy Court

In its bankruptcy filings, Coquico, through Benin, claimed to have little to no assets.  As for creditors, aside from the judgment owed to Rodríguez, the majority of Coquico's purported creditors were Benin's own friends and family.  And, consistent with Benin's and Acquanetta's motions to stay filed in the collection action, Coquico professed in its filings to own no intellectual property, claiming instead that all intellectual property was "subject to a claim of Acquanetta Benin."

Rodríguez, who appeared in the bankruptcy action as a creditor of Coquico's, moved to dismiss the bankruptcy petition for lack of good faith pursuant to 11 U.S.C. § 707, arguing "that the sole reason for the [bankruptcy] filing was to prevent the Judicial Sale [of Coquico's intellectual property]."  Rodríguez noted that the notarized transfer documents — which supposedly showed that the intellectual property had been assigned to Acquanetta — didn't even appear to be genuine.  For example, Rodríguez pointed out that, although Benin claimed he had assigned the copyright for another of Coquico's products, the "Vejigante Bear," to his mother on January 23, 2006, the "Vejigante Bear" copyright was not registered with the United States Copyright

Office until February 24, 2006.  So, Benin could not have assigned it to his mother, Acquanetta, a month before the copyright even existed.[14]   In addition, Rodríguez argued that Coquico had intentionally "diverted [its] business and operations . . . to a new entity to attempt to avoid payment to Rodríguez."

Responding to Rodríguez's motion to dismiss, the bankruptcy court held a two-day evidentiary hearing on December 2, 2013, and January 13, 2014.  Noteworthy here, during the evidentiary hearing, Benin explained that he was operating a newly surfaced Pennsylvania limited liability company — 18 Degrees North — which he had registered with Pennsylvania's Department of State Corporation Bureau in March 2010.  Somewhat remarkably, Benin admitted at the evidentiary hearing that 18 Degrees North was essentially the same business as Coquico, "minus [Rodríguez's] judgment."  And, in fact, the similarities are considerable:

- Benin is the Chief Executive Officer, President, and principal shareholder of 18 Degrees North, as with Coquico;

_____

[14] At the two-day evidentiary hearing in the bankruptcy court, Benin attempted to explain the discrepancy by admitting that he had altered the notarized documents submitted to the copyright and trademark offices, submitting "amended" transfer documents but using the same signature page.  Benin explained that he thought this was appropriate because the original was simply a "placeholder."  The bankruptcy court later speculated that Benin's conduct, altering a notarized document, may have amounted to "a first-degree misdemeanor."

- 10 -

- 18 Degrees North has the same mailing address as Coquico and manufactures and sells the same plush toys as Coquico;

- Acquanetta licensed her intellectual property exclusively to Coquico until 2016, and then (somehow) also licensed it to 18 Degrees North, effective August 31, 2009;

- 18 Degrees North's bank account and Pennsylvania registration are under the name "18 Degrees North, LLC, d/b/a Coquico;"

- 18 Degrees North's customers overlap with Coquico's customers and were derived from Coquico's customer lists;

- Orders made at Coquico's website are filled by 18 Degrees North, and Benin testified that "the front-end of [Coquico's] website [is] essentially the brand Coquico, but the transactions and the inventory [are] associated with 18 Degrees North;"

- In a single year Coquico transferred approximately $45,000 to 18 Degrees North.

At the conclusion of the two-day evidentiary hearing, the bankruptcy court granted Rodríguez's motion to dismiss Benin's bankruptcy petition, finding it was filed in bad faith. See In re Coquico, Inc., 508 B.R. 929, 933 (Bankr. E.D. Pa. 2014). The bankruptcy court determined that Coquico's bankruptcy schedules "contain[ed] so many material falsehoods, inaccuracies, and omissions" that it was "shocking." Highlighting that Coquico's bank accounts "reflected the commingling of funds," "the payment

- 11 -

of personal expenses,[15] prepetition defalcations, [and] post-petition unauthorized transactions," the bankruptcy court found that "virtually every bad faith criteria [was] met . . . without question." See also In re Coquico, Inc., 508 B.R. at 944 (noting that "[t]he evidence established that Benin looted Coquico both prepetition and postpetition, and that he lied in multiple court filings as to Coquico's assets").

The bankruptcy court further noted that 98 percent of Coquico's debt was held by Benin's family members — his wife, his father, and, of course, his mother, Acquanetta.  What's more, the bankruptcy court found Benin's testimony to be "extremely evasive, not credible, contrived and, frankly, coached."

Finally, the bankruptcy court found the timing of the filing suspicious, especially given Benin's own (striking) testimony "that the purpose of the bankruptcy filing was to stop the judicial sale."  The bankruptcy court concluded that Coquico's bankruptcy filing was "nothing more . . . than an attempt to relitigate the copyright lawsuit and the collection lawsuit," and to "spirit away the only valuable asset . . . the copyrights . . . [t]aking the customers, the products, everything and . . . transitioning them . . . into 18 [D]egrees [N]orth simply to attain

---

[15] Benin had readily admitted to the bankruptcy court that Coquico paid basically all of his personal expenses, as well as his family's personal expenses, including, for example, charges to Nordstrom Rack and DirecTV services in his wife's name.

relief from a judgment creditor."  See also In re Coquico, Inc., 508 B.R. at 943-44 (noting that "Benin's own testimony from the Dismissal Motion hearing made crystal clear that it was his ultimate intention to spirit away the business and assets of Coquico in order to leave Coquico judgment proof and his plush toy business insulated from the Rodr[í]guez judgment").

## D.    Another Attempt to Collect the Judgment

After the bankruptcy case was dismissed, on January 29, 2014, Rodríguez filed yet another motion in the district court in Puerto Rico in the collection action seeking to compel payment of the judgment.  The miscellaneous motion — titled "Motion Asking This Court To Order Defendant And Respondents To Pay the Judgment In This Case On Penalty Of Contempt" — invoked concepts of successor liability, veil piercing, and fraud and sought to join Benin, Acquanetta, and 18 Degrees North to the action and to hold them jointly and severally liable for the judgment.  Rodríguez attached Coquico's bankruptcy schedules, the bankruptcy hearing transcript, and the bankruptcy judge's oral decision to the motion.

Rodríguez filed the motion electronically and also sent copies of the motion by regular mail to Coquico, 18 Degrees North, Benin, and Acquanetta.  Upon receiving and reviewing Rodríguez's motion, the district court issued an electronic order setting the motion for hearing on February 28, 2014.  The district court also ordered Rodríguez to "notify all parties in interest" of the

- 13 -

hearing and that failure to appear would result in sanctions. Accordingly, Rodríguez engaged a process server, who personally served Acquanetta with Rodríguez's motion and with the district court's order. And, although Benin avoided personal service, he ultimately acknowledged that he had also received the motion and the district court's order.

Shortly before the hearing on Rodríguez's motion, Benin filed a letter, "as an officer of Coquico," informing the district court that he did not have the resources to hire an attorney and that he would not be able to attend the hearing. Aside from perfunctorily mentioning that the judgment had been entered against Coquico "and no other parties," Benin did not respond to the substance of Rodríguez's motion. Rodríguez replied to Benin's letter, informing the district court that Benin had, in fact, been able to hire two attorneys to represent him in the bankruptcy case. The district court denied Benin's motion (such as it was) and the hearing continued as scheduled.

Despite having been noticed and ordered to appear, Benin, Acquanetta, 18 Degrees North, and Coquico all failed to attend the district court hearing or to oppose Rodríguez's motion. But the hearing proceeded, and Rodríguez entered into evidence the transcript from the bankruptcy hearing, including Benin's testimony, and the bankruptcy court's findings of fact and conclusions of law.

On March 6, 2014, the district court entered an order that joined Benin, Acquanetta, and 18 Degrees North to the action pursuant to Rule 25(c) and held them liable for the judgment. The district court determined that all three were joinable under Rule 25(c), specifically concluding "that 18 Degrees North [] is a successor corporation and alter ego of Coquico" and, therefore, "is liable for [Coquico's] debts, including the judgment, costs, and interest award," and that Benin and Acquanetta are alter egos of both Coquico and 18 Degrees North and, consequently, are also liable for the judgment.

The district court also held Coquico, Benin, Acquanetta, and 18 Degrees North in civil contempt for failure to appear at the hearing and ordered Benin to pay $5,000, "[g]iven the magnitude and the variety of the offenses" he committed to avoid paying the judgment. The district court did not sanction Acquanetta but indicated that if she continued to violate the district court's orders it would do so.

Benin paid the contempt sanction, and appellants timely appealed.

## II. DISCUSSION

On appeal, appellants challenge, in essence, (1) the district court's use of Rule 25(c) to join Benin, Acquanetta, and 18 Degrees North to the judgment and (2) the district court's order finding Benin in civil contempt and imposing a $5,000 sanction.

- 15 -

## A. Rule 25(c)

### 1. Notice:  Clearing the Underbrush

The heart of appellants' argument on appeal, is that the district court erred in using Rule 25(c) to hold them liable for the judgment entered in favor of Rodríguez.[16]  But before tackling appellants' primary Rule 25(c) arguments, we must first address a threshold issue.  Appellants seem ("seem" because their positions are often hard to tease out) to argue that, although Rodríguez's motion sought to join them as parties and hold them liable for the judgment, Rodríguez's motion was insufficient because it did not cite Rule 25(c) as the procedural vehicle for doing so.  Appellants point to Federal Rule of Civil Procedure 7(b)(1) for the proposition that motions must "state the relief sought."  Fed. R. Civ. P. 7(b)(1)(C).  The implication being, it seems, that because Rodríguez's motion did not specifically mention Rule 25(c), it did not state with sufficient particularity the relief Rodriquez was seeking.  Thus, appellants argue, the district court "essentially grant[ed] summary judgment on a theory not raised in the motion papers and without advance notice."

---

[16] Appellants also argue that the district court lacked personal jurisdiction over them.  Although we would typically address jurisdictional questions first, because our conclusions with regard to the district court's application of Rule 25(c) resolve any jurisdictional issues, we will address appellants' jurisdictional arguments in due course.

But the relevant Rule 7 question is whether appellants were "prejudiced by a lack of particularity" and whether the district court could "comprehend the basis for the motion and deal with it fairly." Cambridge Plating Co. v. Napco, Inc., 85 F.3d 752, 760 (1st Cir. 1996) (quoting Registration Control Sys., Inc. v. Compusystems, Inc., 922 F.2d 805, 807-08 (Fed. Cir. 1990)); see also 5 C. Wright & A. Miller, Fed. Prac. & Proc. Civ. § 1192 (3d ed.) ("[T]he niceties of specifying the relief or order sought by the motion are unimportant in some situations and can be disregarded by the court.").

Rodríguez's motion clearly seeks to join Benin, Acquanetta, and 18 Degrees North as parties to the action and to hold them liable for the judgment entered against Coquico. In support of his request, Rodríguez's motion described, in detail, how Benin and Acquanetta attempted to shield Coquico from Rodríguez's judgment by fraudulently transferring Coquico's intellectual property to Acquanetta, and ultimately shifted those assets to 18 Degrees North in an effort to continue Coquico's business free from liability. The motion likewise detailed how Benin and Acquanetta allegedly raided both corporations' reserves for their own personal use, rendering their personal assets and the corporate assets indistinguishable. Moreover, as described in some detail above, there is no question that appellants received a copy of Rodríguez's motion along with the text of the district

- 17 -

court order setting the hearing.  Therefore, Rodríguez's motion unmistakably afforded appellants notice of the grounds and relief sought, if not the procedural mechanism for getting there.[17]  And so, appellants' assertions of error are without merit.

## 2. Application of Rule 25(c)

Having disposed of appellants' notice arguments, we now turn to the merits of their Rule 25(c) challenge.  Construed generously, appellants raise two Rule 25(c) arguments — one more substantive than the other.  First, appellants seem to suggest that Rule 25(c) can only be invoked when a transfer of interest occurs during the pendency of the litigation, not after judgment has been entered.  Next, they argue that the district court improperly relied on Rule 25(c) as a vehicle for joining them because the Rule 25(c) inquiry cannot include veil piercing and alter ego theories, which alter the parties' substantive rights. Any such alteration, they say, must be presented in an independent action.

---

[17] Appellants also seem to argue that Rodríguez's motion sought only to hold Benin, Acquanetta, and 18 Degrees North in contempt for failure to pay the judgment without first making them liable for the judgment itself.  This proposition is belied by the record.  A review of Rodríguez's motion easily shows that he moved to hold appellants liable to pay the judgment, specifically requesting that the district court hold them "jointly and severally liable" for the judgment entered against Coquico.

### a) Clarifying the Standard of Review

In his opening salvo, Rodríguez argues that appellants waived any and all arguments by failing to raise them below. See Cochran v. Quest Software, Inc., 328 F.3d 1, 11 (1st Cir. 2003) (noting that "it is a virtually ironclad rule that a party may not advance [a new argument] for the first time on appeal"). We are inclined to agree. As discussed above, Coquico, Benin, Acquanetta, and 18 Degrees North had ample notice that the district court was considering joining them to the action and holding them "jointly and severally liable to pay the judgment." They likewise had full opportunity to appear in the district court and to contest any aspect of Rodríguez's motion, yet they filed no written opposition, declined to attend the motion hearing, and raised not a single argument below that the district court should refrain from holding them liable for the judgment entered in favor of Rodríguez. As a result, they likely waived, or, at the very least, forfeited, their Rule 25(c) arguments. See United States v. Eisom, 585 F.3d 552, 556 (1st Cir. 2009) (explaining that "waiver implies an intention to forgo a known right, whereas forfeiture implies something less deliberate — say, oversight, inadvertence, or neglect in asserting a potential right").

In response to Rodríguez's assertions of waiver, appellants simply rehash their notice argument, contending that they could not have raised a challenge to the district court's use

of Rule 25(c) because "Rodríguez's motion below never recited [the rule]." But, as discussed above, appellants did know that Rodríguez's motion sought to join them to the action and to hold them liable for the judgment and they made no argument — Rule 25(c) related or otherwise — challenging the district court's authority to grant their joinder. But even so, say appellants, waiver should not be a "straightjacket," and they urge us to relax the rule. Ultimately, however, we need not decide whether appellants' arguments were waived because even assuming, favorably to appellants, that their Rule 25(c) challenges were merely forfeited, appellants' arguments falter under plain error review. See Eisom, 585 F.3d at 556 (noting that "a waived claim is dead and buried," but that a forfeited claim may "be resurrected on appeal" under plain error review).

### b) Rule 25(c) Primer

Rule 25(c), which governs the substitution of parties, provides, in relevant part:

> Rule 25. Substitution of Parties . . .
>
> (c) Transfer of Interest. If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party.

Fed. R. Civ. P. 25(c). In other words, the rule serves as a procedural mechanism to bring a successor in interest into court when "it has come to own the property in issue." Negrón-Almeda v.

<u>Santiago</u>, 579 F.3d 45, 53 (1st Cir. 2009) (quoting <u>Maysonet-Robles</u> v. <u>Cabrero</u>, 323 F.3d 43, 49 (1st Cir. 2003)).  For example, as is the case here, the rule may be "invoked to substitute a successor in interest who . . . obtained the assets of the corporation against whom judgment had been rendered."  <u>Id.</u> (omission in original) (quoting <u>Explosives Corp. of Am.</u> v. <u>Garlam Enters. Corp.</u>, 817 F.2d 894, 906 (1st Cir. 1987)).  Be that as it may, "[t]he merits of the case and the disposition of the property are still determined vis-a-vis the originally named parties." <u>Maysonet-Robles</u>, 323 F.3d at 49 (quoting <u>Minn. Mining & Mfg. Co.</u> v. <u>Eco Chem, Inc.</u>, 757 F.2d 1256 (Fed. Cir. 1985)).

### c) Appellants' Rule 25(c) Timing Argument

Disposing first of appellants' suggestion — also referenced at oral argument — that Rule 25(c) is not available when the transfer occurs after judgment has been entered, we conclude that there was no error, much less plain error.  <u>See</u> <u>United States</u> v. <u>Jimenez</u>, 512 F.3d 1, 3 (1st Cir. 2007) ("Plain-error review places a burden on an appellant to show (i) that an error occurred, (ii) which was clear and obvious, (iii) which affected his substantial rights, and (iv) which seriously impaired the fairness, integrity, or public perception of the proceeding.").

Rule 25(c) applies to actions that are "pending," but this does not preclude substitution during subsequent proceedings

brought to enforce a judgment. See Negrón-Almeda, 579 F.3d at 52 ("Rule 25(c) governs substitution where a party to a lawsuit transfers an interest during the pendency of the lawsuit or after judgment has been rendered."); Explosives Corp. of Am., 817 F.2d at 907 ("Substitution may be ordered after judgment has been rendered in the district court for the purpose of subsequent proceedings to enforce judgment."); Panther Pumps & Equip. Co. v. Hydrocraft, Inc., 566 F.2d 8, 23 (7th Cir. 1977) (citing 3B Moore's Federal Practice P 25.03(1), at 25-101 (2d ed. 1977)) (explaining that Rule 25 applies in subsequent proceeding to enforce a judgment). A proceeding to enforce a judgment is "pending again, and Rule 25 applies." Panther Pumps, 566 F.2d at 23.

It is also worth noting that in this case it is unclear when the relevant transfer of interest even occurred. To hear appellants tell it, the intellectual property was transferred to Acquanetta almost four and a half years before Rodríguez instituted the collection action (query then why Coquico was simultaneously pursuing the copyright action), and Acquanetta granted 18 Degrees North a license to use the intellectual property (breaching Coquico's supposed exclusive license) nearly a year before Rodríguez filed the collection action. So, it would be disingenuous, to say the least, for appellants to argue now that the district court erred in its application of Rule 25(c) because

- 22 -

the transfer of interest occurred <u>after</u> judgment had been entered. Regardless, the district court did not err.

### d) **Appellants' Veil Piercing and Alter Ego Arguments**

Appellants' main argument — that the district court improperly relied on Rule 25(c) to alter the parties' substantive rights by invoking the doctrines of veil piercing and alter ego - presents a more substantial question. After careful consideration, however, we cannot say that the district court's application of Rule 25(c) amounted to an error that was so "clear or obvious," <u>United States</u> v. <u>Duarte</u>, 246 F.3d 56, 60 (1st Cir. 2001), that the district court should have "act[ed] even without an objection." <u>Bielunas</u> v. <u>F/V Misty Dawn, Inc.</u>, 621 F.3d 72, 78 (1st Cir. 2010).

As a reminder, the district court joined 18 Degrees North under Rule 25(c) as "a successor corporation and alter ego of Coquico," and joined Benin and Acquanetta as alter egos of both Coquico and 18 Degrees North. And appellants do not appear to be challenging 18 Degrees North's joinder to the extent that it was only joined as "a successor corporation" of Coquico. In fact, in their briefing, appellants concede that a successor theory — as opposed to veil piercing or alter ego theories — is properly "within the ambit" of Rule 25(c), arguing only that "[w]here there is <u>no</u> successor corporation . . . substitution and liability . . . is not authorized by [the rule]." (emphasis added). Instead,

- 23 -

appellants seem to argue only that the district court erred when it used Rule 25(c) to join 18 Degrees North, Benin, and Acquanetta as alter egos of Coquico.

The distinction, at least as appellants interpret it, is the scope of their liability. They contend that under a successor-in-interest analysis, which they concede is appropriate under Rule 25(c), a party's joinder should be limited to reaching the "interest only." In other words, they argue that under a proper application of Rule 25(c) the district court may join parties who have come to own or control a corporation's assets (i.e., the transferred interest), but only up to the value of those transferred assets. Here, because the district court also concluded that Coquico, 18 Degrees North, Benin, and Acquanetta are all alter egos of each other — and therefore legally a single entity — the district court did not limit their liability to the value of Coquico's transferred assets, but found them jointly and severally liable to Rodríguez for the entire $348,821.23 judgment (plus costs and interest). Appellants view this as, essentially, a substantive determination that is well beyond the scope of Rule 25(c).

Although not elegantly briefed, this is a thought-provoking argument. Unfortunately for appellants, "[p]lain error is one hard test to meet, particularly in civil litigation," Bielunas, 621 F.3d at 78, and appellants cite no cases, in this

- 24 -

circuit or otherwise, that expressly limit Rule 25(c) joinder to the amount of the transferred assets. To the contrary, several other circuits have applied Rule 25(c) in almost exactly the same manner as the district court did here. See, e.g., Panther Pumps, 566 F.2d at 27-28 (allowing the substitution of a corporation's president under Rule 25(c) and holding him personally liable for the full judgment where he had fraudulently attempted to avoid the judgment by transferring the defendant-corporation's assets to a new corporation); Explosives Corp. of Am., 817 F.2d at 907 (allowing substitution of a parent corporation under Rule 25(c) and holding them "liable for the full amount of the judgment" as "the real party in interest" because the parent "owned all of the outstanding stock" and financed and controlled the litigation).

Of particular relevance, perhaps, is Minnesota Mining & Manufacturing Company. In that case, the plaintiff, Minnesota Mining and Manufacturing Co. (3M), obtained a default judgment against Eco Chem, Inc. (ECI) for patent infringement. 757 F.2d at 1258. After the suit against ECI was instituted, ECI's president, Stephanie Rynne, and her husband, George Rynne, who served as ECI's secretary-treasurer, set up a new corporation, EcoChem Limited (ECL), and transferred all of ECI's assets to the new company. Id. at 1258-59. They exchanged their ECI shares for ECL shares, "converted all of ECI's assets to ECL, including the formulae, customer lists, trademarks and inventory," deposited ECI's checks

into ECL's accounts, and "informed their customers that ECL had succeeded ECI." Id. (footnote omitted). 3M then moved to add the Rynnes and ECL as parties to their infringement action pursuant to Rule 25(c). Id. at 1259. After a hearing, the district court granted 3M's motion and joined "the Rynnes and ECL 'as successors in interest and alter egos' of ECI" and held them liable for the full damages and attorney's fees. Id. On appeal, the Rynnes and ECL challenged their joinder — mainly on jurisdictional grounds — but the Federal Circuit affirmed and held "that the district court reached the right result in rejecting [the Rynnes'] efforts at avoidance or evasion . . . ." Id. at 1258.

What this means for us is: when we have never expressly limited Rule 25(c) joinder to the amount of the transferred assets, and other circuits, especially on such similar facts, have sanctioned the use of Rule 25(c) to join parties as alter egos and hold them liable for the full judgment, "any error cannot be plain or obvious." United States v. Diaz, 285 F.3d 92, 96 (1st Cir. 2002). As such, we cannot say that the district court plainly erred in its application of the rule.

Application aside, appellants do not appear to challenge the district court's conclusion that Benin, 18 Degrees North, and Coquico "are all alter egos of one another." However, they do seem to argue — in a single parenthetical — that the district court erred in concluding that Acquanetta was "the alter ego of a party."

- 26 -

Regardless, the district court did not err in finding any of the appellants to be alter egos of one another. Indeed, 18 Degrees North is, by nearly every measure, a mere continuation of Coquico.[18] See Explosives Corp. of Am. v. Garlam Enters. Corp., 615 F. Supp. 364, 368 (D.P.R. 1985) (quoting Dayton v. Peck, Stow & Wilcox Co. (Pexto), 739 F.2d 690, 693 (1st Cir. 1984)) (describing key elements of continuation). It is registered under the name "18 Degrees North, LLC, d/b/a Coquico." The companies share an address, a bank account, and a website. They have the same inventory and clients — due, in part, to Acquanetta's apparent willingness to grant both companies an "exclusive" license to use her intellectual property. An order placed with Coquico is filled by 18 Degrees North and Coquico regularly transfers money to cover

_____

[18] In reaching this conclusion, the district court applied Puerto Rico law. Appellants argue that the district court should have applied Pennsylvania law. In this unusual case, the application of Pennsylvania versus Puerto Rico law may be a distinction without a difference. Compare Lumax Indus., Inc. v. Aultman, 669 A.2d 893, 895 (Pa. 1995) with Explosives Corp. of Am., 615 F. Supp. at 368. That said, we find that the district court did not plainly err in applying Puerto Rico law. Applying Puerto Rico's choice of law rules, the district court reasonably determined that Puerto Rico had the "most significant contacts" with the action. "Among the contacts to consider are the parties' place of incorporation and of business, the place where the injurious conduct occurred, the place where the injury materialized, and the place where the relationship between the parties is centered." Goya Foods, Inc. v. Unanue-Casal, 982 F. Supp. 103, 107 (D.P.R. 1997). Here, the majority of Coquico's sales were in Puerto Rico, the parties' relationships were centered in Puerto Rico, and the injury occurred there. As such, the district court did not err in applying Puerto Rico law.

18 Degrees North's financial obligations. Benin is the principal shareholder and chief executive of both companies, and, astonishingly, he admitted under oath in the bankruptcy proceeding that 18 Degrees North was essentially the same business as Coquico, "minus [Rodríguez's] judgment." Consequently, it was no great leap for the district court to conclude that Benin employed 18 Degrees North as a mechanism to continue Coquico's business absent the specter of Rodríguez's judgment.

Likewise, the district court did not err in concluding that Benin and Acquanetta are alter egos of Coquico and 18 Degrees North. See United States v. JG-24, Inc., 331 F. Supp. 2d 14, 63 (D.P.R. 2004), aff'd, 478 F.3d 28 (1st Cir. 2007) (listing factors courts should consider to determine whether to disregard the corporate form). Benin, as the sole shareholder and principal of Coquico, exercised total control over Coquico (and then 18 Degrees North) and did not maintain Coquico's corporate form, comingling Coquico's funds with his own accounts. Coquico regularly paid Benin and Acquanetta's personal expenses, despite the fact that Acquanetta was not even an employee of the company. And, in myriad other ways, the record demonstrates that Benin and his family routinely treated Coquico's coffers as their own, charging personal expenses and shopping trips to the company. Accordingly, the district court did not err in concluding that Coquico, 18

Degrees North, Benin, and Acquanetta "are all alter egos of each other."[19]

In any event, even if the district court had erred, under plain error review, "we need not intervene unless the error . . . seriously impugn[ed] the 'fairness, integrity, or public reputation of judicial proceedings.'" Bielunas, 621 F.3d at 78 (quoting United States v. Roy, 506 F.3d 28, 30 (1st Cir.2007)). Given appellants' conduct, we cannot conclude that the district court's application of the rule — using it to hold appellants jointly and severally liable for Rodríguez's judgment — impugns the fairness of these proceedings. If anything, the opposite may be true as the record supports the district court's conclusion that Benin and Acquanetta engaged in the fraudulent transfer of Coquico's intellectual property from Coquico to Acquanetta — and from Acquanetta to 18 Degrees North — for the sole purpose of making Coquico judgment proof.[20] To effectuate this fraudulent

---

[19] Given our conclusion that the district court did not plainly err in its application of Rule 25(c) we will not consider whether any such error affected appellants' "substantial rights."

[20] If Coquico's copyright infringement action against Rodríguez was honestly pursued after Coquico's transfer, through Benin, of its intellectual property to Acquanetta, that may amount to a fraud on the court. See Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir. 1989) ("A 'fraud on the court' occurs where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense."). Alternatively, if Coquico did not transfer its

transfer, Benin and Acquanetta altered notarized documents and appear to have submitted fraudulent assignment papers to the Copyright Office, the district court, and the bankruptcy court. Moreover, the transfer of assets from Coquico to Acquanetta did not end the shenanigans. Even as appellants tell it, Benin and Acquanetta breached Coquico's so-called "exclusive" licensing agreement by also licensing 18 Degrees North to use Acquanetta's intellectual property. This breach of Coquico's licensing agreement also seemed to serve no other purpose than to further effectuate the transfer of Coquico's corporate assets, including its inventory and customers, to Benin's other company. Nor, we note, does it appear that 18 Degrees North paid Coquico for the use of its name, website, and customer lists.

Under these extraordinary circumstances, we cannot say that the district court plainly erred in joining 18 Degrees North, Benin, and Acquanetta to the action and holding them jointly and severally liable for the judgment pursuant to Rule 25(c). Further, as noted above, even if an error occurred, because it did not "seriously impair[] the fairness, integrity, or public perception of the proceeding," Jimenez, 512 F.3d at 3, the district court did not plainly err, see United States v. Caraballo-Rodriguez, 480

---

intellectual property before pressings its copyright infringement claim, Benin's and Acquanetta's actions here may amount to the same.

F.3d 62, 70 (1st Cir. 2007) (explaining that a no-plain-error holding does not constitute a "ruling on the merits").

### 3. The Remaining Jurisdictional Argument

Finally, here, appellants argue that the district court lacked personal jurisdiction over them because "they were not parties to the original judgment" and have insufficient contacts with the forum. But once personal jurisdiction is established over the original party, it "is retained over Rule 25(c) successors in interest," Maysonet-Robles, 323 F.3d at 49, as long as "the substituted party had an opportunity to challenge its joinder or substitution." Explosives Corp. of Am., 817 F.2d at 906 (citing Minn. Mining & Mfg. Co., 757 F.2d at 1262–63 and 7C C. Wright, A. Miller & M. Kane, Fed. Prac. & Proc. Civ. § 1958 at 559–60 (2d ed. 1986)). "Were this not so, the owners of the property could merely transfer legal ownership of the assets from one shell corporation to another in a different jurisdiction, putting a party whose initial suit satisfied the jurisdictional requirements to the immense burden of chasing the involved assets from courtroom to courtroom." Minn. Mining & Mfg. Co., 757 F.2d at 1263. As we explained, appellants here had notice that Rodríguez sought to hold them liable for the judgment entered against Coquico and an opportunity to challenge their joinder before the district court. Accordingly, personal jurisdiction was properly acquired over appellants as Rule 25(c) successors in interest.

### B.   The Contempt Issue

Benin also argues that the district court erred in finding him in civil contempt and imposing a $5,000 sanction for failure to attend the hearing on Rodríguez's joinder motion. Specifically, Benin argues that although the district court categorized the contempt finding as "civil," it was actually criminal in nature and, therefore, he was entitled to additional due process protections.  "Mindful that the district court enjoys wide latitude in its choice of sanctions," AngioDynamics, Inc. v. Biolitec AG, 780 F.3d 420, 426 (1st Cir. 2015), cert. denied, 136 S. Ct. 535 (2015), we conclude that the district court did not abuse its discretion here.[21]  See Project B.A.S.I.C. v. Kemp, 947 F.2d 11, 15-16 (1st Cir. 1991) (explaining that the district court's "ultimate finding on contempt is reviewed for abuse of discretion," while the district court's fact finding is reviewed for clear error, and legal questions and mixed questions of fact and law are reviewed de novo).

To determine whether the imposition of contempt sanctions is civil or criminal, we must "look to the purpose and character of the sanctions imposed, rather than to the label given to the proceeding by the court below."  In re Kave, 760 F.2d 343, 351 (1st Cir. 1985).   "The purpose of a criminal contempt

---

[21] Rodríguez does not argue that appellants waived their contempt arguments.

proceeding is the vindication of the court's authority by punishing for a past violation of a court order," while "civil contempt is imposed to coerce present or future compliance with an order of the court." Id. (emphasis omitted). But "[t]here is no dichotomous split between coercion and punishment . . . and a civil contempt sanction may evidence a punitive flavor." AngioDynamics, 780 F.3d at 426.

Here, although Benin is correct that the contempt order was not reparative and that he was not given the opportunity to bring himself into compliance with the district court's order, both of which suggest a punitive purpose, the sanction imposed also seemed intended to coerce his future compliance with the district court's orders. To wit, the district court found Benin in contempt of its order to appear, but also explained that it was imposing the sanction because of Benin's continued "efforts to avoid the judgment in this case," suggesting that the district court may have sought to coerce Benin's future compliance with its efforts to enforce the judgment.

Indeed, in explaining its decision not to impose a sanction on Acquanetta, the district court stated that if Acquanetta continued to violate the district court's orders that she too could face sanctions in the future. The implication being, of course, that Acquanetta and Benin would face additional sanctions for continued noncompliance. This suggests that the

district court was less concerned with punishment and more concerned with coercing Benin's and Acquanetta's future compliance with its orders. See Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 829 (1994) ("A contempt fine . . . is considered civil and remedial if it . . . 'coerce[s] the defendant into compliance with the court's order . . . .'" (citation omitted)). After careful consideration of the purpose and character of the sanction imposed in this case, therefore, we are satisfied that the district court acted within its discretion in imposing civil, not criminal, sanctions on Benin.

As we read appellants' arguments, that ends the matter. They do not seem to challenge the district court's contempt finding beyond contesting the nature of the sanctions imposed. However, for the sake of completeness, to the extent that appellants do seek to challenge the merits of the district court's civil contempt finding, we will review in brief.

To prove civil contempt, the moving party — Rodríguez — must show by clear and convincing evidence that: "(1) the alleged contemnor had notice of the order, (2) 'the order was clear and unambiguous,' (3) the alleged contemnor 'had the ability to comply with the order,' and (4) the alleged contemnor violated the order." Hawkins v. Dep't of Health & Human Servs. for N.H., Comm'r, 665 F.3d 25, 31 (1st Cir. 2012) (quoting United States v. Saccoccia, 433 F.3d 19, 27 (1st Cir. 2005)). Here, appellants received notice

of Rodríguez's motion to hold them liable for the judgment "on penalty of contempt" and of the district court's order setting the hearing and mandating that "[f]ailure to appear [would] result in sanctions." The order to appear was clear and unambiguous. Appellants argued below that they did not have the means to comply with the order, but the record adequately supports the district court's conclusion that appellants had the wherewithal to attend and that their "protestations of penury" were not credible given their ability to hire an attorney in the bankruptcy proceeding that had taken place only days before. For these reasons, we determine that the district court did not abuse its discretion in finding appellants in civil contempt.

### III. CONCLUSION

In sum, we conclude that the district court did not plainly err in joining Benin, Acquanetta, and 18 Degrees North under Rule 25(c) as alter egos of Coquico and holding them liable for the judgment entered in favor of Rodríguez. We likewise affirm the district court's order finding appellants in civil contempt and imposing a $5,000 sanction on Benin. Costs to Rodríguez.